157 N.J. Super. 565 (1978)
385 A.2d 284
WILLIAM F. HYLAND, ATTORNEY GENERAL OF NEW JERSEY, ET AL., PLAINTIFFS,
v.
ELWOOD KIRKMAN ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 10, 1978.
*569 Messrs. Haines, Schulze, Wood & Tapper, attorneys for defendants Kaufman, Kaplan, DeMarco, Dreschler, Saratoga Land Trust, K & D Land Trust, and Cambridge Abstract & Research Co. (Mr. Martin L. Haines appearing).
Messrs. Sills, Beck, Cummis, Radin & Tischman, attorneys for defendants Kirkman and Trimble (Mr. Clive S. Cummis appearing).
*570 Messrs. Kimmelman, Wolff & Samson, attorneys for defendant Great Notch Development Corporation (Mr. Irwin I. Kimmelman appearing).
Mr. Elias G. Naame, attorney for defendants Estate of Paul C. Burgess, Sr., Paul C. Burgess, Jr. and Kathleen Keeney Burgess.
Mr. Thomas J. Subranni, attorney for defendant Richard Tuthill.
Mr. John L. White, attorney for defendant Chelsea Title & Guaranty Co.
Mr. John J. Degnan, Attorney General of New Jersey, attorney for plaintiffs (Ms. Judith A. Yaskin, Deputy Attorney General, appearing).
WOOD, J.S.C.
The Attorney General of New Jersey, the Department of Environmental Protection and its Commissioners have instituted this action to (as the plaintiffs put it) "rectify a massive fraud upon the courts and land recordation system of the State." Plaintiffs ask as relief the "setting aside of certain judgments, conveyances, and tax sale certificates which were integral to the fraudulent scheme." Presently before the court are motions by a number of defendants for dismissal of the complaint.
A brief statement of the facts as alleged in the complaint is necessary to an understanding of the issues.[1]
*571 The action arises by reason of the efforts of two groups of persons to acquire for their own purposes title to a tract of land, in area about 4800 acres, situate in the Township of Bass River, Burlington County, and forming a part of the great wilderness area known as the Pine Barrens. The first of these groups may be denominated for the purpose of this statement, the Kirkman-Burgess interest. The second may be called the Kaufman-DeMarco interest.
The Kirkman-Burgess group acquired color of title to the lands in question by deed from defendant Richard Tuthill dated October 9, 1961. Tuthill was an employee of Chelsea Title and Guaranty Co. He held no title or interest whatever in the premises. Nevertheless, being approached on behalf of Paul C. Burgess, Sr. or defendant Kirkman, he executed a deed purporting to convey the lands therein described to a corporation called Pinelands Development Company (PDC). This corporation was formed four days previous to the purported conveyance, on October 4, 1961. Its incorporators were Carol Trimble, daughter of Elwood Kirkman; Kathleen Keeney Burgess, wife of Paul C. Burgess, Jr. and daughter-in-law of Paul C. Burgess, Sr.; and one S. Bertman. The stock was issued to the incorporators but the corporation was actually controlled by Kirkman and Burgess Sr. Included in this tract is a parcel of 30.5 acres to which, prior to the purported conveyance, the State of New Jersey acquired title by deed from one E. Pharo.
On October 19, 1962 PDC conveyed 3400 acres of the tract to West New Jersey Society (WNJ). The stock of WNJ was issued to defendants Paul C. Burgess, Jr. and David R. Fitzsimons, a member of Kirkman's law firm. Kirkman and Burgess Sr. also controlled this corporation.
On October 22, 1962 WNJ instituted in the Superior Court, Chancery Division, an action to quiet title to the 3400-acre tract. The action was entitled West New Jersey Society, Trustee v. Samuel Richards et al., Docket C-414-62. The State of New Jersey was not named a defendant despite its record title to the parcel of 30.5 acres. By means of a *572 fraudulent and false affidavit of inquiry, a default judgment was entered in this action February 8, 1963.
WNJ defaulted on taxes and defendant Tanners Brook Inc. purchased a tax sale certificate (TSC 275). Tanners Brook is the alter ego of WNJ. The incorporators, stock-holders and directors were practically the same. Tanners Brook, on November 30, 1966, assigned TSC to Kathleen Keeney (now Kathleen Keeney Burgess).
As to the Kaufman-DeMarco interests, defendants Kaufman and Kaplan began their efforts to acquire title to the tract in 1961. The basis for their claim was certain tax sale certificates assigned to them by Bernard A. Campbell, which at that time were over 20 years old. On the strength of those tax sale certificates those defendants claimed a right to redeem eight tax sale certificates assigned to the State in 1936 by Bass River Township. Kaufman and Kaplan then instituted an action entitled Kaplan v. State of New Jersey. A stipulation of settlement was entered, under which the State of New Jersey agreed to reassign the certificates to Bass River Township for cancellation. Bass River, through its solicitor, defendant Mark DeMarco, contested Kaplan's right to cancellation of the tax sale certificates held by the State. Kaplan then instituted suit in 1964 entitled Kaplan v. Bass River Township.
While that action was pending the Kaufman interests were interpleaded in an action instituted by the Kirkman-Burgess interests, entitled WNJ v. Bass River Township. As a result a settlement was reached wherein an agreement was made between Kaufman and Kirkman the purpose of which was to conceal the fraudulent nature of defendants' claims. In furtherance of the agreement PDC conveyed 1400 acres of the tract to defendant Saratoga Land Trust, which in turn was controlled by defendant DeMarco. Saratoga was incorporated on September 21, 1965, the same day as this conveyance. Also, Tanners Brook assigned its interest in the tax sale certificate referred to as TSC 275 to Keeney. Keeney *573 then instituted an action entitled Keeney v. Dressel to foreclose the right of redemption in TSC 275. Final judgment was entered on April 19, 1967. On May 12, 1967 Keeney conveyed 1200 acres of the tract covered by TSC 275 to Kaufman. On November 28, 1968 defendant K&D Land Trust was established, and on that same date Saratoga conveyed its interest in the tract to K&D. The interest holders in Saratoga were DeMarco's wife, Weisbecker, Keeney and Dreschler. The interest holders in K&D are Kaufman, a New York group, DeMarco's wife, Weisbecker, Keeney and Dreschler.
Shortly after the settlement in WNJ v. Bass River Township, DeMarco, while still solicitor of Bass River, was retained by Kaufman to represent his interests in Bass River. DeMarco employed Keeney to abstract the title to Kaufman's properties. In 1966 DeMarco, on behalf of Bass River, made a motion to amend the order obtained in 1964 in Kaplan v. Bass River. The original order required the State to reassign its tax sale certificates to Bass River Township. Bass River was to allow Kaplan to redeem. The amended order required the State to reassign its liens directly to Kaplan. In 1970 DeMarco brought an action for foreclosure on four of the state tax sale certificates; judgment was granted.
In 1969 Kaufman and DeMarco represented to the heirs of Beyer and Burdette, persons in a valid chain of title to the property, that they (Kaufman and DeMarco) had acquired title through the deeds from the Kirkman-Burgess group. They then paid consideration of $5000 to the heirs for release of their interests in the property.
On August 1, 1969 Keeney conveyed 2200 acres covered by TSC 275 to defendant Society of Divine Vocation (SDV). On August 21, 1969 SDV conveyed the same property to defendant Great Notch Development Corp. Defendant Chelsea performed the title search for this transaction.
On August 9, 1973 Kaufman conveyed 100 acres of the tract to defendant J & M Land Co. This 100 acres was part of the 1200 acres conveyed by Keeney to Kaufman in furtherance *574 of the alleged Kirkman-Kaufman fraudulent settlement.
On March 29, 1974 Kaufman instituted a quiet title action entitled Kaufman v. Adams to quiet title to the 1400 acres conveyed by PDC to Saratoga and from Saratoga to K&D. This action is still pending.
As of the filing of the complaint the following held interests in the original 4800 acre Tuthill tract:

 Kaufman 1100 acres
 J & M 100 acres
 Great Notch 2200 acres
 K & D 1400 acres

To illustrate the chain of title and as an aid to understand the facts, see the attached chart of the chain of title.
The present motion is brought on behalf of defendants to dismiss the complaint on a number of grounds and for summary judgment. They will be dealt with in order.

I. Standing

It is first urged that plaintiffs lack standing to maintain this action. While recognizing the right of the Attorney General to protect the interest of the general public when that interest is challenged, defendants argue that there is no such challenge demonstrated in this case. They contend that if damage to any interest is shown by the complaint, it is damage to private interests only and that these are not such as may be defended by the Attorney General on his own motion. There does not appear here, they say, any question of "great public moment" which calls for or sanctions the intervention of the Attorney General. Woulfe v. Associated Realties Corp., 130 N.J. Eq. 519, 525 (Ch. 1942); Kugler v. Romain, 58 N.J. 522 (1971). Defendants argue that if anyone was wronged by the fraudulent scheme, it was "merely" a group of private individuals rather than the "public at large." They maintain that there is no authority in the Attorney General to protect persons involved in private *575 real estate transactions from the fraudulent acts of other private individuals. Granting that the Attorney General has broad discretion to determine what matters involve the public interest, O'Regan v. Schermerhorn, 25 N.J. Misc. 1 (Sup. Ct. 1946), they argue that the issue which is the subject of litigation should have "an impact on the public distinct from its impact on particular citizens." This case, they say, has no such impact. Therefore they label the Attorney General's determination to institute this action an "abuse of discretion" and an unjustifiable invasion of private rights.
I am unable to accept such a narrow view of the status and authority of plaintiffs. The complaint asserts that there has been use (or abuse) of the "recordation system" of this State, and further, that fraud has been perpetrated on the courts by these defendants to the end of perpetrating fraud upon citizens of the State and of appropriation unto themselves rights in real estate previously nonexistent and, in effect, manufactured out of the whole cloth. That such activity threatens the integrity of those institutions and tends to bring them into disrepute seems obvious. It seems to me equally obvious that the integrity of these institutions is of vital public importance, and that an action to protect them is well within the discretion of the Attorney General. As Judge (later Justice) Ackerson said in O'Regan v. Schermerhorn, supra.
It is settled in our state that the Attorney General has all the power invested in his office at common law except as modified by constitutional or statutory regulation.

* * * * * * * *
He is invested with a broad discretion in determining what matters may be of interest to the public generally * * * [at 8]
The court went on to point out that the statute respecting the office of the Attorney General (N.J.S.A. 52:17A-1 et seq.) "does not restrict but rather reaffirms the common law authority of this official to attend to all legal matters *576 in which the people of the state are interested". Id. at 9. See also, Van Ness v. Deal, 139 N.J. Super. 83 (Ch. Div. 1975).
Clearly, more than private interests is at stake here. The activities charged to these defendants involve lands within the Pine Barrens, or Pinelands, a vast area which the court must take judicial notice is vitally affected with the public interest. Conceding, arguendo, as contended by defendants, that lands within this great wilderness are for the most part privately owned, this does not at all alter the fact that the Pinelands are generally regarded as a unique natural resource and that there is and has long been concern on all levels of government concerning their protection and preservation. In an area where the public interest is vitally affected it is of no moment that private interests may also be protected or benefited at the same time. As was stated in Attorney General v. Delaware and Bound Brook R.R. Co., 27 N.J. Eq. 631 (E. & A. 1876)
In equity as in the law court the Attorney General has the right, in cases where the property of the sovereign or the interests of the public are directly concerned, to institute suit ... for their protection. The state is not left without redress in its own courts because no private citizen chooses to encounter the difficulty of defending it, but has appointed this high public officer, on whom it has cast the responsibility and to whom, therefore, it has given the right of appearing in its behalf and invoking the judgment of the courts on such questions of public moment. [at 633]
Moreover, the Attorney General is seeking to protect the State's own property interest in the 30.5 acres included within the Tuthill tract.
Even aside from the question of the State's right to protect its own property and the public interest in the "Pinelands," the State has the right and duty to protect its institutions from misuse. The Attorney General has elected to protect the integrity of the recording system and its judicial system from misuse. He has a right to bring this action to litigate the proprietary interest of the State. When individuals, whether public officials or private individuals, misuse *577 a public institution then the Attorney General has the right and duty to protect the integrity of that institution. Driscoll v. Burlington Bristol Bridge Co., 8 N.J. 433 (1952).
The Attorney General has discretion to determine what matters are in the public interest. He has so determined in this case. His determination is strongly persuasive. Evans-Aristocrat Industries Inc. v. Newark, 140 N.J. Super. 226, 229-230 (App. Div. 1976). I am convinced that there is here no abuse of discretion. Plaintiffs clearly have standing to maintain this action.

II. Joinder of Parties

Defendants next assert as a ground for dismissal that there has been a failure on the part of plaintiffs to join as defendants persons who are necessary or indispensable parties. Specifically, they say that the heirs of Beyer and Burdette and those named as defendants in the several actions to quiet title are indispensable parties to this action and have not been joined. The short answer to this is that failure to join necessary or indispensable parties is not ground for dismissal. R. 4:28-1(a) provides:
A person who is subject to service of process shall be joined as a party to the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest in the subject of the action and is so situated that the disposition of the action in his absence may either (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant.
Further, R. 4:30 provides:
Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by court order on motion by any party or its own motion. Any claim against a party may be severed and proceeded with separately by court order.
*578 Assuming that the persons mentioned should be joined pursuant to R. 4:28-1(a) but their joinder is not feasible because they cannot be served with process (which is not presently established), it would then be the task of the court to determine whether the action may proceed with the parties presently before the court, or be dismissed because the absent person is regarded as indispensable. R. 4:28-1(b).
I am satisfied in this case that there has not been a failure to join any indispensable parties.
Defendants contend that the heirs of Beyer and Burdette and defendants in the actions to quiet title, of whom there are approximately 155, have an interest in the subject matter of the action which mandates their joinder. It is argued that if plaintiffs are successful, such persons may be subjected to multiple or inconsistent claims by reason of the restoration to them of the title to their lands. It is said that they would be obligated to repay the monies which defendants paid to acquire their interests as well as an obligation for back taxes. Alternatively, defendants suggest that if the lands in question are placed in a constructive trust, the heirs and quiet-title defendants may be deprived of their interest in the land without just compensation.
Plaintiffs answer that, while the heirs and the quiet-title defendants may indeed be interested in the outcome of this action, their interest is not such as to mandate their joinder. They point out that the object of the action is not to determine ownership interests of persons in the lands in question. Except for the ownership claim of the State, the action cannot be said to be a quiet title action. Rather, the action is, as previously stated, a challenge to the fraudulent misuse of the system of recording titles to land and of the legal procedures designed to assure the orderly transfer of such title. Plaintiffs seek to undo a fraudulent scheme and deprive the perpetrators of the unlawful fruits thereof. So viewing this action, the joinder of myriad holders of title interests (some possibly still unidentified) is not essential to a proper resolution *579 of the issues. Such parties are not necessary, let alone indispensable.
In this respect this case is closely analogous to Kugler v. Romain, 58 N.J. 522 (1971). In that case the Attorney General brought an action under the Consumer Fraud Act, N.J.S.A. 56:8-8, to enjoin and redress the fraudulent and deceptive sale of so-called "educational" books. The action was brought in the name of the Attorney General without naming any of the individual consumers allegedly defrauded. The court held that the unconscionability of the sales contracts involved was a matter of public as well as private concern, and that the Attorney General was entitled to the broad measure of relief sought. In dealing with the scope of the authority of the Attorney General, the court said:
In our judgment, the statutes referred to above in their total impact, when considered in connection with the Attorney General's general statutory and common law authority to act in matters affecting the public welfare (N.J.S.A. 52:17A-4(h))  require the conclusion that he has authority to bring action in the public interest under N.J.S.A. 56:8-8 either on behalf of specifically named buyers  or in the nature of a class action on behalf of similarly situated buyers. [at 538-539]
The defendants here assert, among other things, that the Attorney General is seeking to maintain an action in the nature of a class action without complying with the procedural requirements of R. 4:32. However, R. 4:32 contains no requirement that the Attorney General give notice when he commences an action. Kugler v. Koscot Interplanetary, Inc., 120 N.J. Super. 216, 236 (Ch. Div. 1972). So here, I consider that it is not the obligation of the Attorney General to join as parties the victim or victims of the alleged fraudulent conduct so affecting the public interest.
Plaintiffs assert that they here seek to create the functional equivalent of a fund by the placement of the lands in a constructive trust to be subsequently disposed of. I agree with plaintiffs' position that while, in an action for *580 the disposition of such a trust, all parties in interest must be joined, they need not be joined where the action, as here, seeks merely the creation of the trust. Johnson v. Middleton, 175 F.2d 535, 537 (7 Cir.1949).
In Garnick v. Serewitch, 39 N.J. Super. 486 (Ch. Div. 1956) Judge (later Justice) Haneman observed:
The rule that all parties having an interest in the subject matter must be joined is not inflexible but is rather a rule of convenience which will be controlled and regulated in the discretion of the court. Thus, where the parties are very numerous and their joinder would cause such unnecessary expense that to burden a plaintiff with it would amount to a denial of the aid of court, it may be dispensed with [at 497]
The joinder of the numerous heirs and quiet-title defendants is not necessary to the proper resolution of this action. I agree with plaintiffs that all necessary parties have been joined.

III. Statutes of Limitations and Laches

Defendants advance several arguments for dismissal based on the statutes of limitation of actions and on the doctrine of laches.
A. They assert that, in seeking to establish a trust comprising the lands in question, plaintiffs seek to deprive the Beyer and Burdette heirs, along with defendants, of their interest in the lands. Since these interests were acquired more than 20 years ago, it is argued, the action is barred by N.J.S.A. 2A:14-8, which provides
No person or body politic or corporate shall be sued or impleaded by the State of New Jersey for any real estate or for any rents, revenues, issues or profits thereof except within twenty years next after the right of title thereto or cause of such action shall have accrued.
It is a sufficient answer to point out that the Beyer and Burdette heirs are not being sued for anything, and if anything the suit has for one of its objects the redress to them of fraudulent deprivation of their lands. Obviously this cause *581 of action accrued at the earliest, in 1961, when the deed from Tuthill is said to have been executed. N.J.S.A. 2A:14-8 is inapplicable and the action is not barred thereby.
B. Nor is this action barred, as contended by defendants, by the so-called six-year statute, N.J.S.A. 2A:14-1. It is argued that the bar has arisen as to the Kirkman-DeMarco interests because the acts charged to them occurred in 1969. Acknowledging that, where fraud is alleged, as it is here, the limitation of action to correct the fraud does not begin to run until the fraud is discovered, it is said that the Tuthill deed, which is the basis of the charge of fraud, was given in 1961, more than six years ago and is itself constructive notice of the fraud. I am unable to conceive how the recording of a deed, itself a fraud and a fabrication, can serve as notice of the fraud inherent in its creation. But more important, the statute of limitations is not applicable to the State unless the Legislature has so provided. State v. American-Hawaiian Steamship Co., 29 N.J. Super. 116, 138 (Ch. Div. 1953); Brindley v. Lavallette, 33 N.J. Super. 344, 364 (Law Div. 1954); Trustees for Support of Public Schools v. Ott & Brewer Co., 135 N.J. Eq. 174, 177 (Ch. 1944); Veterans Loan Auth. v. Wilk, 61 N.J. Super. 65 (App. Div. 1960).
The argument for dismissal based on N.J.S.A. 2A:14-1 cannot be sustained.
Apart from the statutes of limitations, defendants contend that plaintiffs' action is barred by laches.
Laches is an equitable defense. The party urging its application must show that his adversary, without explanation or excuse, delayed in asserting a claim now stale, that the delay was unreasonable under the circumstances, and that it visited prejudice upon the party asserting the delay. [Allstate Ins. Co. v. Howard Savings Institution, 127 N.J. Super. 479, 489 (Ch. Div. 1974)]
Like the statutory limitations, the doctrine of laches has been held not to be imputed to the government to prevent the enforcement of a public right or the protection of *582 the public interest for failure or delay on the part of public officers in the performance of their duty.
As a general rule laches or neglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect as public interest ...
A suit by the United States to enforce and maintain its policy respecting lands which it holds in trust for all the people stands upon a different plane in this and some other respects from the ordinary private suit to regain the title to real property or to remove a cloud from it. [Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917).]
Here I can discern no such delay on the part of the State as would operate to entitle defendants to judgment of dismissal as a matter of law. On the pleadings and affidavits it cannot be said that, even if the doctrine of laches is applicable, the plaintiffs have been guilty of negligent delay in the assertion of the public rights. Allstate Ins. Co. v. Howard Savings Institution, supra; Giehrach v. Rupp, 112 N.J. Eq. 296 (E. & A. 1932).

IV. Res Judicata and Collateral Estoppel

Count I of the complaint alleges, among other things, that the Kaufman interests secured tax sale certificates to lands within the Tuthill tract which were issued in 1928, and also secured, by virtue of a court order, certain tax sale certificates covering the same lands which were later issued and purchased by the Township of Bass River and assigned to the State; that the state-held certificates were ordered assigned to Kaplan, and that such tax sale certificates are void or voidable and Kaplan has no right to foreclose. Plaintiffs seek judgment declaring "void or voidable" the tax sale certificates held by Kaplan.
Defendants state in an affidavit by DeMarco that the State was a defendant in a suit by Kaplan to obtain assignment of the eight tax sale certificates; that the State settled that suit by agreeing to surrender the certificates; that later the State was a party to a suit by Kaplan against Bass River *583 Township, also involving the surrender of the same eight certificates, and was, by order entered in the second suit, required to assign the certificates, not having done so after the first suit; that later four of the tax sale certificates were foreclosed by Kaufman in a suit in which the State was a defendant, was served and defaulted. Defendants argue that the claims of the State to these same tax sale certificates are "dead" either on the theory of res judicata or of collateral estoppel.
Where an issue is disposed of in litigation, it is barred from being relitigated in a later suit where the second suit involves the same cause of action, parties or their privies, and issues, as were involved in the prior suit. However, this issue cannot be resolved in defendants' favor on this motion. The record is simply too meager to permit a determination whether the prior suits were indeed dispositive of the issues. Brick Tp. v. Vannell, 55 N.J. Super. 583 (Ch. Div. 1959).
Plaintiffs apparently concede that, as to four of the tax sale certificates, the State must abide by the previous order of the court, and they say they do not seek to overturn either that order or the judgment of foreclosure. However, as to the remaining four, plaintiffs contend that the State does not seek to assert any proprietary interest represented by those liens, but rather seeks a determination that defendants likewise have no interest therein, or in any lands by virtue thereof. These issues cannot be determined on these motions. They do not presently constitute grounds for dismissal.

V. Voiding Judgments

Defendants move for dismissal of so much of the complaint as seeks the voiding of the judgments entered in the cases of WNJ v. Richards and Keeney v. Dressel, on the ground that the action is not instituted within the one-year limitation provided in R. 4:50-1 which provides that a motion to such end must be made within one *584 year after the entry of judgment. This motion overlooks the fact that the relief thus sought is not sought by motion but by collateral action. R. 4:50-3 provides that this rule does not
* * * limit the power of a court to set aside a judgment, order or proceeding for fraud upon the court, or to entertain an independent action to relieve a party from a judgment, order or proceeding.
Plaintiffs here seek relief by independent action, charging, among other things, fraud upon the court. The limitation provided in R. 4:50-1 is inapplicable. Nor is a collateral attack on a judgment for fraud on third persons barred by the rule. Catabene v. Wallner, 16 N.J. Super. 597 (App. Div. 1951). The motions for dismissal may not be granted upon this ground.

VI. Fraud

Defendants contend that the allegations of the complaint charging fraud are conclusory in nature and do not set forth the factual particulars with specificity as required by R. 4:5-8(a). It is correctly stated that fraud is a conclusion of law and may not be charged in general terms; the pleadings must state the facts relied on as constituting fraud. Kadison v. Horton, 142 N.J. Eq. 223 (E. & A. 1948). However, I am constrained to disagree with defendants' contention. The complaint adequately recites that the conveyances from the Beyer and Burdette heirs were induced by representations on the part of DeMarco that the title was good; that the representations were false; that DeMarco knew (or should have known) them to be false, and that they were relied on by the heirs to their damage. Of course it must be quickly added that these allegations are emphatically denied. But this simply underscores that there are genuine issues of fact challenged and that there may not be judgment of dismissal as a matter of law.
*585 There is, moreover, no basis on which to grant defendants' alternative application for a more definite statement. The complaint sets forth plaintiff's factual allegations of fraud with sufficient clarity. Gorecki v. Gorecki, 1 N.J. Super. 471, 472 (Ch. Div. 1948).
For all the reasons herein set forth, defendants' several motions to strike and for summary judgment of dismissal are denied.

APPENDIX

 Tuthill 4800 acres
 |
 PDC 4800 acres 10/9/61
 | |
 WNJ 3400 acres 10/19/62 |
 | |
 TCS 275 by Tanners Brook |
 on 3400 acres 12/6/64 |
 | |
 | Saratoga 1400 acres 9/21/65
 | |
 Assigned to Keeney 3400 acres |
 11/30/66 |
 | | |
 | | K & D 1400 acres 11/28/68
 | | |
 1200 acres to Kaufman |
 5/12/67 |
 | |
 | SDV 2200 acres
 | 8/1/69
 | |
 J & M 100 acres 8/9/73 |
 |
 Great Notch 2200
 acres 8/21/69
 A filing of complaint
 Kaufman  1100 acres
 J & M 100 acres
 Great
 Notch 2200 acres
 K & D 1400 acres
 ____________________
 4800 acres

NOTES
[1] It is to be emphasized that this is simply a statement of facts alleged in the complaint and is not and obviously cannot be a statement of findings of fact by the court. The facts recited are assumed to be true only for the purposes of consideration of the present motions. The allegations of the complaint are sharply denied or disputed by the answers filed on behalf of the several defendants.