COMMONWEALTH OF PENNSYLVANIA on its own behalf and as Parens Patriae, Appellee,

v.

MID–ATLANTIC TOYOTA DISTRIBUTORS, INC., Carecraft Industries, Ltd., Frederick R. Weisman, and Al Sweet Motor Sales, Inc., Allegheny Toyota, Inc., Bel Air Motors, Inc., Bergman Toyota, Inc., Bob Mayberry Chevrolet-Toyota, Inc., Bud Haas Toyota Motors, Inc., Falconi Toyota Motors, Inc., Joel Confer AMC, Inc., Knobloch Toyota Park, Inc., McCracklin-Sturman Toyota, Inc., Meadville Toyota, Inc., Montgomery Toyota, Inc., Rohrich Cadillac, Inc., Suburban Toyota, Inc., Trostle Oldsmobile, Inc., University Toyota, Inc., Belvin J. Kishbaugh, Inc., Bobart, Inc., Continental Motor Sales Co., Inc., Hartman Motorcars Co., J.H. Bennett, Inc., James W. Halterman, Inc., Lancaster Toyota, Inc., Performance Motors, Inc., R.D. Ertley Toyota, Inc., Richard Auto Sales, Inc., Valley Toyota, Inc., A.S. Berman, Inc., Airport Toyota, Inc., Central City Toyota, Inc., Charles A. Bott, Inc., Chester Mack Toyota, Inc., Foster Toyota, Inc., Henry Kehl Enterprises, Inc., Peter Alan Toyota, Inc., Sloane Toyota, Inc., Speedcraft Enterprises, Inc., Thompson Toyota, Inc., Tony Biscotte, Inc., Appellants.

DISTRICT OF COLUMBIA ex rel. ROGERS, Appellee,

v.

MID–ATLANTIC TOYOTA DISTRIBUTORS, INC., Carecraft Industries, Ltd., Frederick R. Weisman, and Rosenthal Toyota, Inc., Silver Spring Toyota, Inc., Appellants.

MARYLAND ex rel. SACHS, Delaware ex rel. Gebelein, Appellees,

v.

MID–ATLANTIC TOYOTA DISTRIBUTORS, INC., Carecraft Industries, Ltd., Frederick R. Weisman, Anton Motors, Inc., Schaefer/May Motors Sales, Ltd., Torrey, Inc., Castle Toyota, Inc., Croyste

Toyota, Inc., Waldorf Toyota, Inc., Younger Toyota, Inc., Annapolis-Toyota, Inc., Rosenthal Toyota, Inc., Silver Spring Toyota, Inc., Fulker Toyota, Inc., Jones Plymouth, Inc., Fredericktown Toyota, Inc., Toyota Village, Inc., R & H Motor Cars, Ltd., Russell Motor Cars, Inc., Schaefer & Strohminger, Inc., Best Toyota, Inc., Laurel Toyota, Inc., Premier Motor Co., Inc., Timonium Toyota, Inc., Royal Imports of Delaware, Inc., Airport Toyota, Inc., C.F. Schwartz Motor Company, Inc., Appellants.

Nos. 82–1131 to 82–1133.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 7, 1982.
Decided March 24, 1983.

William J. Murphy, Washington, D.C. (Raymond W. Bergan, Scott Blake Harris, Williams & Connolly, Washington, D.C., on brief), Michael G. Charapp, Washington, D.C. (Basil J. Mezines, Jacob A. Stein, Stein, Mitchell & Mezines, Washington, D.C., on brief), Francis P. Newell, Philadelphia, Pa. (Craig E. Zeigler, Montgomery, McCracken, Walker & Rhoades, Philadelphia, Pa., on brief), for appellants.

Robert W. Hesselbacher, Jr., Asst. Atty. Gen., Baltimore, Md. (Stephen H. Sachs, Atty. Gen., Charles O. Monk, II, Asst. Atty. Gen. and Chief, Antitrust Div., Michael F. Brockmeyer, Francis John Gorman, Asst. Attys. Gen., Baltimore, Md., on brief), for appellees.

Before PHILLIPS and CHAPMAN, Circuit Judges, and WALTER E. BLACK, Jr., United States District Judge, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

This interlocutory appeal has been certified, pursuant to 28 U.S.C. § 1292(b), on the question whether the state attorneys general of Maryland, Delaware, and Pennsylvania, and the Corporation Counsel of the District of Columbia, may maintain statutory *parens patriae* damage actions under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. §§ 15c–15h (1976) (the Act), in the names of their respective jurisdictions on behalf of their natural-person residents injured by an alleged price-fixing conspiracy in violation of the Sherman Act, 15 U.S.C. § 1. While departing somewhat from the reasoning of the district court, we affirm its ruling that the state attorneys general[1] involved here may prosecute these statutory *parens patriae* actions under the antitrust laws.

## I

Between December 1980 and August 1981, the states of Maryland, Delaware, Pennsylvania, Virginia, and West Virginia, and the District of Columbia, instituted civil antitrust actions in federal district courts in their respective jurisdictions against Toyota automobile dealers and distributors in the middle-Atlantic region. These actions, brought pursuant to the Antitrust Improvements Act of 1976, 15 U.S.C. §§ 15c–15h, have been consolidated along with two private actions in the District of Maryland by the Judicial Panel on Multidistrict Litigation. The state attorneys general, acting in their statutory *parens patriae* capacity, seek damages on behalf of their natural-person residents injured by an alleged conspiracy to fix the prices of Toyotas.[2]

Defendants moved to dismiss the states' actions, alleging *inter alia* that the attorneys general lack authority to bring *parens patriae* damage actions under the federal antitrust laws.[3] The district court denied the motion to dismiss, ruling (1) that the state attorneys general were authorized by federal law, irrespective of local law, to maintain these actions, or alternatively (2) that state law provided the attorneys general with authority independent of federal law to bring these actions. Following certification by the district court under 28 U.S.C. § 1292(b), we granted defendants' petition to appeal from this interlocutory order.

## II

The Antitrust Improvements Act provides that an "attorney general of a State may bring a civil action in the name of such State, as parens patriae on behalf of natural persons residing in such State," to secure treble money damages for injury to their property flowing from violations of the antitrust laws.[4] 15 U.S.C. § 15c(a)(1). *See generally* Scher, *Emerging Issues Under the Antitrust Improvements Act of 1976*, 77 Colum.L.Rev. 679 (1977). While the structure of this statutory scheme—whether it deals essentially with notions of cause of action, right of action, party capac-

---

**1.** Unless otherwise indicated, references to "attorneys general" will include the Corporation Counsel of the District of Columbia, who for all relevant purposes is classified under the statutory scheme as a state attorney general. *See* 15 U.S.C. § 15g. Similarly, references to "states" will include the District of Columbia.

**2.** In addition, each state seeks injunctive relief under 15 U.S.C. § 26, Pennsylvania alleges a tie-in violation under 15 U.S.C. §§ 1 & 14, and Maryland and Delaware assert pendent claims under their state antitrust statutes.

**3.** On appeal, defendants challenge the authority of only four of the six attorneys general involved in this consolidated litigation. No challenge was made to the authority of the West Virginia Attorney General to bring a *parens*

*parens patriae* action, apparently because the West Virginia legislature has vested the attorney general with explicit power to sue under the federal antitrust laws, *see* W.Va.Code § 47–18–17(a) (1980). Furthermore, no challenge is raised here to the *parens patriae* authority of the Virginia Attorney General; the Virginia case was not transferred to the District of Maryland until after the district court issued an appropriate certification under 28 U.S.C. § 1292(b).

**4.** "The term 'State attorney general' means the chief legal officer of a State, or any other person authorized by State law to bring actions under section 15c...." 15 U.S.C. § 15g(1).

ity, real party in interest, representative action, or other concepts—may not be the clearest, its essence is plain enough.

■■■ It creates in the states a new right of action under existing substantive federal antitrust law. *See Reiter v. Sonotone Corp.,* 442 U.S. 330, 344 n. 7, 99 S.Ct. 2326, 2333 n. 7, 60 L.Ed.2d 931 (1979) ("the statute authorizes the states to assert [consumers' causes of action] in a *parens patriae* capacity"); *Illinois v. Sangamo Construction Co.,* 657 F.2d 855, 859 (7th Cir.1981); S.Rep. No. 803, 94th Cong., 2d Sess. 42 (1976) (the Act "creates a new statutory cause of action for States"). Because it involves no change in the substantive basis for antitrust liability, it is purely procedural [5] in its effect. *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 734 n. 14, 97 S.Ct. 2061, 2068 n. 14, 52 L.Ed.2d 707 (1977); *In re Montgomery County Real Estate Antitrust Litigation,* 452 F.Supp. 54, 60–61 (D.Md. 1978); *Scher, supra,* at 721–25. Emphasizing its wholly procedural cast, the Act specifically recognizes the power of the states to forego any benefit of the Act by legislatively renouncing the right of action conferred. *See* 15 U.S.C. § 15h. And, in a final procedural twist, the Act recognizes the "authority" of state attorneys general— so far as federal interests are concerned—to prosecute the actions in the name of the state.[6] *See* 15 U.S.C. § 15c(a)(1).

As the legislative history makes apparent, *see* H.R.Rep. No. 499, 94th Cong., 2d Sess. 6–8, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2572, 2575–78; S.Rep. No. 803, *supra,* at 42, the Act was aimed primarily at enlarging the potential for consumer recovery for antitrust violations by effectively bypassing the burdensome requirements of Rule 23, Fed.R.Civ.P. 23, that might tend to dissuade private litigants from pursuing conventional consumer class actions for an-

titrust injury, *see* Scher, *supra,* at 707–12; Comment, Parens Patriae *Antitrust Actions for Treble Damages,* 14 Harv.J.Legis. 328, 336–37, 341–43 (1977). Therefore, the Act is best understood as constituting the states, acting through their attorneys general, as "consumer advocates in the [antitrust] enforcement process." H.R.Rep. No. 499, *supra,* at 8. *See In re Grand Jury Investigation of Cuisinarts, Inc.,* 665 F.2d 24, 35 (2d Cir.1981), *petition for cert. filed,* 51 U.S.L.W. 3023 (U.S. Aug. 3, 1982) (No. 81–1595).

### III

Defendants do not appear seriously to challenge the essential accuracy of this analysis of the structure and purpose of the statutory scheme. They attack instead the district court's conclusions (1) that the "authority" conferred by the Act upon state attorneys general empowers them to sue on this federally created right of action irrespective of state law limitations on their power, and (2) that, in any event, the law of each state involved supplies, or does not limit, the power of these attorneys general to maintain the right of action contemplated by the Act.

As to (1), defendants contend that, because Congress obviously lacks power to override state law definitions of the duties and authority of state officers, the Act must be interpreted as not intending to confer any federal authority at odds with state limitations. This accepted, the argument runs, none of the jurisdictions involved vests its attorney general with authority to prosecute the right of action created by the Act, so that the suits must be dismissed.

■■■ We do not think it necessary to address the validity of the district court's de-

---

**5.** Though the new procedural right does involve a remedial expansion in the form of a "civil penalty" recoverable by the state itself. *See* 15 U.S.C. § 15e(2).

**6.** The state attorney general thus might be viewed as suing on the state's cause of action *ex relatione,* in a "[l]egal proceedin[g] . . . instituted by the attorney general . . . in the name

and behalf of the state, but on the information and at the instigation of an individual." Black's Law Dictionary 522–23 (5th ed. 1979). Although obviously not dispositive, we note that each of the consolidated actions at issue here has been styled as "State" *ex rel.* "Attorney General."

termination that, irrespective of state law, the authority of state attorneys general to prosecute these actions is properly conferred by the federal Act. Accepting, *arguendo,* defendants' postulate that Congress could not have intended to redefine or expand the state-defined offices of these attorneys general, we hold that each of these state attorneys general derives power from his respective state law framework to prosecute this federal right of action.

Defendants' contention that the state laws involved here do not provide for, or proscribe, suit by these attorneys general on the federal right of action has two prongs. First, they argue that such power cannot be traced to any common law authority [7] to

bring *parens patriae* actions, because the right of action defined by the Act, though so denominated, expands common law *parens patriae* principles.[8] This accepted, they contend, power to sue on the federal right of action can derive only from the statutes or constitutions of the several states. These, defendants say, limit the attorneys general to prosecuting actions that vindicate quasi-sovereign or proprietary state interests.

We disagree. The state laws and constitutions do not confine the authority of the states attorneys general to the prosecution of common law *parens patriae* actions and actions to vindicate quasi-sovereign state interests. Instead, they fully authorize

---

**7.** The plaintiff-attorneys general here involved, like those in a vast majority of jurisdictions, possess common law powers and duties in addition to those defined expressly by statutory or constitutional provision. *See Commonwealth v. Schab,* 477 Pa. 55, 383 A.2d 819 (1978) (Pennsylvania); *Murphy v. Yates,* 276 Md. 475, 348 A.2d 837 (1975) (Maryland); *Darling Apartment Co. v. Springer,* 25 Del.Ch. 420, 22 A.2d 397 (Del.Ch.1941) (Delaware); *cf. Mead v. Phillips,* 135 F.2d 819, 824 (D.C.Cir. 1943) (common law an important and substantial part of the law of the District of Columbia). *See generally* Shepperd, *Common Law Powers and Duties of the Attorney General,* 7 Baylor L.Rev. 1, 1–3 (1955). None of the four jurisdictions involved in this appeal explicitly forbids its attorney general to maintain these actions, and "[i]n the absence of express statutory or constitutional restrictions, the common law duties and powers attach themselves to the office as far as they are applicable and in harmony with our system of government." *State ex rel. Derryberry v. Kerr-McGee Corp.,* 516 P.2d 813, 818–19 (Okl.1973) (citing cases); *see also D'Amico v. Board of Medical Examiners,* 11 Cal.3d 1, 112 Cal.Rptr. 786, 520 P.2d 10, 20 (1974); *Lund ex rel. Wilbur v. Pratt,* 308 A.2d 554, 558 (Me.1973).

**8.** We agree that the statutory right of action is more expansive. In strict contemplation, common law *parens patriae* actions only involved the state in two capacities: as "the general guardian of all infants, idiots, and lunatics" and supervisor of "all charitable uses in the kingdom," 3 W. Blackstone, Commentaries * 47; and as the watchdog of its "quasi-sovereign" interests. *See Hawaii v. Standard Oil Co.,* 405 U.S. 251, 257–58, 92 S.Ct. 885, 888–89, 31 L.Ed.2d 184 (1972); *West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1089 (2d Cir.), *cert. denied,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). *See generally* Curtis, *The Check-*

ered Career of Parens Patriae: *The State as Parent or Tyrant?,* 25 DePaul L.Rev. 895 (1976). Neither capacity embraces actions such as those here in issue where the state sues on behalf of injured natural residents. The putatively injured consumers do not suffer from any legal disability; indeed, the statute presumes in them existing individual rights of action, *see Illinois Brick Co. v. Illinois,* 431 U.S. 720, 734 n. 14, 97 S.Ct. 2061, 2068 n. 14, 52 L.Ed.2d 707 (1977). Furthermore, "[n]o state has a legitimate quasi-sovereign interest in seeing that consumers or any other group of persons receive a given sum of money." Malina & Blechman, *Parens Patriae Suits for Treble Damages Under the Antitrust Laws,* 65 Nw.L. Rev. 193, 214 (1970). In Justice Holmes' classic formulation, there cannot be a state quasi-sovereign interest "independent of and behind the titles of its citizens," *Georgia v. Tennessee Copper Co.,* 206 U.S. 230, 237, 27 S.Ct. 618, 619, 51 L.Ed. 1038 (1907), when by definition the statute empowers the state to enforce the rights of injured citizens. *See Pfizer, Inc. v. Lord,* 522 F.2d 612, 616–18 (8th Cir.1975), *cert. denied sub nom. Imperial Government of Iran v. Pfizer, Inc.,* 424 U.S. 950, 96 S.Ct. 1422, 47 L.Ed.2d 356 (1976); *California v. Frito-Lay, Inc.,* 474 F.2d 774, 775–77 (9th Cir.), *cert. denied,* 412 U.S. 908, 93 S.Ct. 2291, 36 L.Ed.2d 974 (1973); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 309 F.Supp. 1057, 1062–63 (E.D.Pa.1969); *Land O'Lakes Creameries, Inc. v. Louisiana State Board of Health,* 160 F.Supp. 387, 388–89 (E.D. La.1958).

But, as our discussion in text indicates, the fact that the statutory "*parens patriae*" action is broader in scope than the common law action is not dispositive of the issue raised by defendants.

prosecution of the statutory right of action here in issue,[9] which concededly is of neither type. *See supra* note 8.

To show why requires analysis of the relevant state provisions. *See Wallis v. Pan American Petroleum Corp.,* 384 U.S. 63, 68–69, 86 S.Ct. 1301, 1304–05, 16 L.Ed.2d 369 (1966); *United States v. Yazell,* 382 U.S. 341, 352–57, 86 S.Ct. 500, 506–09, 16 L.Ed.2d 404 (1966). *Cf. Florida ex rel. Shevin v. Exxon Corp.,* 526 F.2d 266, 267 n. 2 (5th Cir.) (state law controls question of attorney general's authority to bring federal antitrust action), *cert. denied,* 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976); *accord, Ohio v. United Transportation, Inc.,* 506 F.Supp. 1278, 1281 (S.D.Ohio 1981).

While the statutory and constitutional definitions of the powers of the several plaintiff-attorneys general differ significantly, a common thread runs throughout. The Maryland Constitution provides that the Attorney General shall "commence, and prosecute ... any civil ... action ... on the part of the State or in which the State may be interested," Md. Const. art. V, § 3(a)(2);[10] the Delaware Antitrust Act empowers the Attorney General to institute proceedings "on behalf of the State and its public bodies" for suspected antitrust violations, Del.Code Ann. tit. 6, § 2105 (Supp. 1980); District of Columbia law provides that the Corporation Counsel shall "have

charge and conduct of all law business" of the District, D.C.Code Ann. § 1–361 (1981); and Pennsylvania's Commonwealth Attorneys Act specifies that the Attorney General "shall represent the Commonwealth and its citizens in any action brought for violation of the antitrust laws," 71 Pa.Stat.Ann. § 732–204(c) (Purdon Supp.1982).

While the language differs, each provision allocates to the attorney general power and authority to represent the jurisdiction and its interests in litigation. In at least two ways, we find the present actions to fall clearly within the ambit of each of the attorneys general's state-derived authority.[11]

### A

First, these attorneys general have brought suits in the names of their respective states to enforce causes of action created by federal law. Whether the state is a real party in interest or merely a representative party, this cause of action exists in favor of the state. *See New Mexico v. Scott & Fetzer Co.,* 1981–2 Trade Cas. (CCH) ¶ 64,439, at 75,149 (D.N.M. Dec. 22, 1981). Because the attorneys general are suing to enforce their jurisdictions' causes of action, these lawsuits indeed are "on the part of" Maryland, on "on behalf of" Delaware, and representative of the Common-

**9.** It is important to distinguish Congress' assumed lack of power (or intention) to expand the authority of state attorneys general from its obvious power to create a right of action which would be available to a state attorney general acting fully within the scope of predefined powers. On oral argument, counsel for defendants blurred this distinction by urging that Congress had necessarily expanded the powers of state attorneys general because a "parens patriae" action seeking damages on behalf of individual consumers could not have been maintained prior to passage of the Antitrust Improvements Act. *See California v. Frito-Lay, Inc.,* 474 F.2d 774 (9th Cir.), *cert. denied,* 412 U.S. 908, 93 S.Ct. 2291, 36 L.Ed.2d 974 (1973). But it is entirely possible that a state attorney general could be acting within the limits of state-defined power while prosecuting a new federal right of action.

**10.** The Maryland Constitution requires as well that either the General Assembly or the Gover-

nor authorize the Attorney General to prosecute an action on the part of the State. *See* Md. Const. art. V, § 3(a)(2). As the parties concede, the Maryland Attorney General has received authorization from the Governor to maintain this cause of action.

**11.** Our resolution avoids a substantial separation-of-powers question that would be presented by a judicial determination that a state attorney general has exceeded the broad scope of legislatively and constitutionally delegated authority. *Cf. Nader v. Kleindienst,* 375 F.Supp. 1138, 1141–42 (D.D.C.1973) (discussing separation-of-powers issue presented by judicial review of prosecutor's discretion to refuse to prosecute); *Secretary of Administration v. Attorney General,* 367 Mass. 154, 326 N.E.2d 334, 339 (1975) (suggesting that recourse to the political arena must serve as the ultimate check on the powers of a state attorney general).

wealth of Pennsylvania and the "law business" of the District of Columbia.[12]  *Cf. Oklahoma ex rel. Johnson v. Cook,* 304 U.S. 387, 390–91, 58 S.Ct. 954, 956, 82 L.Ed. 1414 (1938) ("Since the state is the proper party plaintiff by virtue of the ... statute, it may maintain the action regardless of whether it is the real party in interest or merely a nominal plaintiff for the use and benefit of [affected citizens].") (quoting *State ex rel. Murray v. Pure Oil Co.,* 169 Okl. 507, 509, 37 P.2d 608, 610 (1934)); *State ex rel. Norvell v. Credit Bureau of Albuquerque, Inc.,* 85 N.M. 521, 524, 514 P.2d 40, 43 (1973) (in suit brought *ex relatione* in the name of the state by the attorney general, the state is the proper party litigant and the attorney general is the attorney for the state).

### B

In addition to their authority to sue to enforce their jurisdictions' statutory causes of action, these attorneys general have undoubted authority to pursue litigation that advances or vindicates public interests.  *See*

**12.**  We do not mean to suggest, as the district court seemingly did, that any action brought by the attorney general and captioned in the name of the state *ipso facto* falls within the scope of an attorney general's functions.  Here, however, we do not rely on the styling of the complaint, but look rather to whether there exists an underlying federal right of action in the name of the state.

**13.**  A state may well have a "public interest" in maintaining an action without having a "quasi-sovereign" interest sufficient to support original jurisdiction in the Supreme Court or to overcome an eleventh amendment bar to the recovery of damages.  *Cf. Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,* —— U.S. ——, 102 S.Ct. 3260, 3271, 73 L.Ed.2d 995 (1982) (Brennan, J., concurring) ("the question whether a State can bring a *parens patriae* action within the original jurisdiction of this Court may well turn on considerations quite different from those implicated where the State seeks to press a *parens patriae* claim in the district courts").  The question of whether a state possesses a "quasi-sovereign" interest in an action, vitally important in challenges to a state's standing to sue under the antitrust laws, *see, e.g., Alfred L. Snapp & Son,* or suits seeking to invoke the original jurisdiction of the Supreme Court, *see, e.g., Georgia v. Pennsylvania Railroad Co.,* 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051 (1945);  *Oklahoma v. Atchison,*

*Brown v. Stanton,* 617 F.2d 1224, 1232 n. 14 (7th Cir.1980) ("In general, a state Attorney General may institute such suits as he deems necessary for ... the protection of public rights."), *vacated and remanded on other grounds,* 453 U.S. 917, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981).  *See, e.g.,* Md. Const. art. V, § 3(a)(2) (Attorney General may bring any civil action "in which the state may be interested");  *Darling Apartment Co. v. Springer,* 25 Del.Ch. 420, 22 A.2d 397, 403 (Del.Ch.1941) (Attorney General may represent the State "in all litigation where the public interests are concerned");  *cf. District of Columbia v. Pryor,* 366 A.2d 141 (D.C.1976) (Corporation Counsel may represent a private party in a civil commitment proceeding when proper or necessary, in the judgment of the executive).  Indeed, the notion that these attorneys general may institute actions to remedy invasions of the public interest appears implicit in the statutory and constitutional schemes defining their powers.[13]

As Congress fully recognized in enacting the Antitrust Improvements Act, *see* H.R.

*Topeka, & Santa Fe Railway Co.,* 220 U.S. 277, 31 S.Ct. 434, 55 L.Ed. 465 (1911);  *New Hampshire v. Louisiana,* 108 U.S. 76, 2 S.Ct. 176, 27 L.Ed. 656 (1883), does not bear on the separate question whether a state has an interest in "present[ing] and enforc[ing] individual claims of its citizens as their trustee."  *North Dakota v. Minnesota,* 263 U.S. 365, 376, 44 S.Ct. 138, 140, 68 L.Ed. 342 (1923).

This distinction was recognized in *Oklahoma ex rel. Johnson v. Cook,* 304 U.S. 387, 58 S.Ct. 954, 82 L.Ed. 1416 (1938), where the Supreme Court held that Oklahoma could not invoke the Court's original jurisdiction in an action brought by the state seeking to liquidate the assets of an insolvent bank and repay depositors and creditors.  At the same time, however, the Court observed that "[t]he protection of depositors of insolvent state banks is a distinct economic policy of the state" and that "[i]n so far as the object of th[e] action is to further the established economic policy of the state, the state may be said to have a real interest created by its governmental policy, as distinguished from a mere nominal interest, even though the pecuniary benefits of the litigation, if ultimately successful, go to the depositors and creditors of the insolvent bank."  *Id.* at 391, 58 S.Ct. at 956 (quoting *State ex rel. Murray v. Pure Oil Co.,* 169 Okla. 507, 510, 37 P.2d 608, 610 (1934)).

Rep. No. 499, 94th Cong., 2d Sess. 6–8, *reprinted in* 1976 U.S.Code Cong. & Ad. News 2572, 2575–78; S.Rep. No. 803, 94th Cong., 2d Sess. 39–40 (1976), this statutory cause of action promotes enforcement of the federal antitrust laws, which promotes at the same time a state's public interest in protecting its citizens from violations of these laws,[14] *see New Mexico v. Scott & Fetzer Co.,* 1981–2 Trade Cas. (CCH) ¶ 69,-439, at 75,149 (D.N.M. Dec. 22, 1981); *Clark Oil & Refining Corp. v. Ashcroft,* 639 S.W.2d 594, 596–97 (Mo.1982); *see also Iowa v. Scott & Fetzer Co.,* 1982–2 Trade Cas. (CCH) ¶ 64,873, at 72,359 (S.D.Iowa July 8, 1982). We reject the defendants' contention that a state has an "interest," under the various provisions involved here, only in those suits which vindicate quasi-sovereign or proprietary interests. Undoubtedly, a state can have a legitimate public interest in ensuring the economic well-being of its citizens—and in indirectly promoting a smoothly functioning economy freed of antitrust violations—even though the most obvious beneficiaries may be individual consumers who ultimately recoup money damages.[15] *See Oklahoma ex rel. Johnson v. Cook,* 304 U.S. 387, 391, 58 S.Ct. 954, 956, 82 L.Ed. 1416 (1938); *Hyland v. Kirkman,* 157 N.J.Super. 565, 576, 385 A.2d 284, 289 (N.J.Super.Ct.Ch.Div.1978).

Moreover, in addition to enforcing the public interest in protecting citizens from antitrust injury, damage actions under the Antitrust Improvements Act such as the ones in issue, which allege illegal price-fixing behavior, may result in an award "deemed a civil penalty . . . and deposited with the State as general revenues." 15 U.S.C. § 15e(2); *see* Scher, *supra,* at 727–28. It would seem beyond question that all the jurisdictions involved in this litigation have vested their respective attorneys general with the authority to maintain antitrust actions in the federal courts that could, quite conceivably, result in substantial monetary awards to their state treasuries.

## IV

For the foregoing reasons, we hold that the attorneys general of Maryland, Delaware, and Pennsylvania, and the Corporation Counsel of the District of Columbia, properly may maintain these actions under the Antitrust Improvements Act of 1976, 15 U.S.C. §§ 15c–15h.

AFFIRMED.

---

**14.** In this circumstance, where the state seeks recovery of damages on behalf of specific individuals injured by antitrust violations, it is concededly not acting in its "quasi-sovereign" capacity. *See supra* note 8. *But see Massachusetts ex rel. Bellotti v. Russell Stover Candies, Inc.,* 541 F.Supp. 143, 145 (D.Mass.1982).

**15.** Furthermore, many cases have recognized vast discretion in state attorneys general to determine the scope of the public interest, to be disturbed only where the action is "clearly inimical to the people's interest." *Michigan State Chiropractic Association v. Kelley,* 79 Mich.App. 789, 262 N.W.2d 676, 677 (Mich.Ct. App.1978). *See, e.g., Florida ex rel. Shevin v.*

*Exxon Corp.,* 526 F.2d 266, 268–69 (5th Cir.) (citing cases), *cert. denied,* 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976); *Hyland v. Kirkman,* 157 N.J.Super. 565, 576, 385 A.2d 284, 289 (N.J.Super.Ct.Ch.Div.1978). *Cf. Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,* —— U.S. ——, 102 S.Ct. 3260, 3271–72, 73 L.Ed.2d 995 (1982) (Brennan, J., concurring) ("I know of nothing—except the Constitution or overriding federal law—that might lead a federal court to superimpose its judgment for that of a State with respect to the substantiality or legitimacy of a State's assertion of sovereign interest.").