671 F.2d 1282
 1982-1 Trade Cases 64,637
 Lloyd KYPTA, Plaintiff-Appellant,
v.
McDONALD'S CORPORATION, a Delaware Corporation; McDonald's
System, Inc., an Illinois Corporation; and
Franchise Realty Interstate Corporation,
an Illinois Corporation,
Defendants-Appellees.
 No. 80-5587.
 United States Court of Appeals,
Eleventh Circuit.
 March 29, 1982.
 
 Fowler, White, Burnett, Hurley, Banick & Strickroot, John R. Kelso, Harold L. Ward, Miami, Fla., for plaintiff-appellant.
 Walton, Lantaff, Schroeder & Carson, Laurence A. Schroeder, Miami, Fla., Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Earl E. Pollock, Alan H. Silberman, Chicago, Ill., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before THORNBERRY*, FAY and HATCHETT, Circuit Judges.
 FAY, Circuit Judge:
 
 
 1
 Fast food restaurateur, Lloyd Kypta, seeks to overturn the trial judge's decision dismissing and denying class certification of his antitrust action, charging his franchisor, McDonald's Corporation, with having cooked up an anticompetitive tying arrangement. Our digestion of the record and arguments satisfies us that Kypta has failed to proffer evidence of his having been burnt by such a purported scheme. Missing an essential ingredient-proof of injury-Kypta's claims must be rejected as flavorless. In a manner which hopefully the most discriminating legal palate finds piquant, we explain our affirmance below. On, then, to our spicy tale:
 
 I. A FRANCHISE WITH ALL THE WORKS
 
 2
 McDonald's Corporation is one of the world's leading fast food franchisors, with a chain of 5,000 restaurants spanning the globe. In 1965, the Corporation constructed a McDonald's restaurant on land which it had purchased at N.W. 79th Street in Miami, Florida. The Corporation's total expenditure for the land and building was $115,984.00. The following year, McDonald's granted the appellant, Lloyd Kypta, a franchise authorizing his use of both the McDonald's name and method of doing business for a 20-year term. As a condition of obtaining the franchise, Kypta was required simultaneously to become a member of Franchise Realty Interstate Corporation (FRIC), McDonald's wholly-owned subsidiary, by executing a lease agreement covering the restaurant premises. Since as far back as 1961, McDonald's has imposed the same lease requirement upon all would-be franchisees. The franchise agreement requires payment to McDonald's Corporation of an initial fee of $10,000.00; a site location fee of $2,500.00; and 2.2% of gross monthly sales. Payment to FRIC of an additional 7% of monthly gross sales, which serves as rent for the land and building, is exacted under the lease. As a franchise tenant, Kypta submits payment of all taxes, insurance, upkeep and renovation charges to FRIC, which remits them to its parent, McDonald's Corporation. In addition, Kypta must post a $15,000.00 security deposit in return for FRIC's issuance of a non-interest bearing, nonassignable promissory note. After fifteen years, half of the deposit money is to be returned to Kypta; the balance is to be refunded at a conclusion of the twenty year lease term. The franchise and lease agreements each provide that breach of one constitutes breach of the other.
 
 
 3
 In 1973, Kypta sought and was refused a second franchise by McDonald's to open another restaurant. In April of that year, he instituted the present suit charging McDonald's with violating antitrust law by requiring all franchisees to be its tenants and to pay it a nonassignable, interest-free security deposit.[1] Kypta brought suit on behalf of himself and a class of all McDonald's franchisees. Class certification was denied as to the real estate tie-in claim, on the grounds that individual questions predominated regarding the proof of damages for each franchisee. McDonald's agreed to a test case proceeding with regard to the security deposit tie-in claim, according to which a class would be certified only upon the completion of trial and the finding of a violation. McDonald's then moved for summary judgment on the security deposit and real estate claims. In granting the motion, the district judge held as follows:
 
 
 4
 If there were an antitrust violation, which this Court seriously doubts, Plaintiff simply is not in a position to show fact of damage. A trial on the issue before the Court would serve no useful purpose.
 
 
 5
 App. at 28.
 
 
 6
 Kypta presently appeals the trial court's decision dismissing and refusing to certify as a class action the real estate tie-in claim.[2]
 
 
 7
 II. BIG MAC: A TIE-IN?
 
 
 8
 A tying arrangement exists where the sale of one item, the tying product, is conditioned on the buyer's additional purchase of a second, tied product. Northern Pacific Railway Co. v. United States, 356 U.S. 1, 5-6, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). It has been said that "the essence of illegality in a tying arrangement is the wielding of monopolistic leverage; a seller exploits his dominant position in one market to expand his empire into the next." Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 611, 73 S.Ct. 872, 881, 97 L.Ed. 1277 (1953). Such a coercive scheme strikes at the heart of our antitrust policy-the preservation of "free and unfettered competition in the marketplace." 356 U.S. at 4, 78 S.Ct. at 517. Tying arrangements have therefore been outlawed in all instances in which the tying product possesses "sufficient economic power ... to appreciably restrain free competition for the tied product, involving a not insubstantial amount of interstate commerce. Carpa, Inc. v. Ward Foods, Inc., 536 F.2d 39, 45 (5th Cir. 1976). In addition, the plaintiff must be prepared to demonstrate that the violation caused him concrete economic injury. Alabama v. Blue Bird Body Co., Inc., 573 F.2d 309, 317 (5th Cir. 1978). By its very terms, section four of the Clayton Act, pursuant to which the appellant seeks recovery, forecloses the possibility of maintaining an action unless the prerequisite of actual injury is met:
 
 
 9
 Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws ... shall recover three-fold the damages by him sustained....
 
 
 10
 15 U.S.C. § 15.
 
 
 11
 An analysis of the vital purposes of antitrust legislation has led courts uniformly to uphold this statutory interpretation. See, e.g., Gray v. Shell Oil Co., 469 F.2d 742 (9th Cir. 1972); Winckler v. Smith Citrus Products Co. v. Sunkist Growers, Inc., 346 F.2d 1012, 1014 (9th Cir. 1965). Most recently, the Supreme Court in J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981), has characterized section four of the Clayton Act as
 
 
 12
 essentially a remedial statute. It provides treble damages to "(a)ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws...." (Emphasis supplied.) To recover treble damages then, a plaintiff must make some showing of actual injury attributable to something the antitrust laws were designed to prevent ...
 
 
 13
 451 U.S. at 562, 101 S.Ct. at 1927. The Court found support for this view by looking to congressional intent:
 
 
 14
 The legislative history buttresses this view. Both the Patman bill, H.R. 8442, § 2(d), 74th Cong., 1st Sess. (1935), as introduced in the House, and the Robinson bill, S. 3154, § 2(d), 74th Cong., 2d Sess. (1935), as introduced in the Senate, provided that a plaintiff's damages for a violation of § 2(a)[3] shall be presumed to be the amount of the price discrimination. The provision, however, encountered such strong opposition in both Houses that the House Committee eliminated it from its bill, H.R.Rep.No. 2287, 74th Cong., 2d Sess., 16 (1936), and the Senate Committee modified the provision to authorize presumptive damages in the amount of the discrimination only when plaintiff shows the "fact of damage."
 
 
 15
 S.Rep.No. 1502, 74th Cong., 2d Sess., 8 (1936). The Conference Committee eliminated even that compromise, and § 2(a) was passed in its present form. Congress thus has rejected the very concept which petitioner seeks to have the Court judicially legislate. Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 199-201 (95 S.Ct. 392, 400-401, 42 L.Ed.2d 378) (1974).
 
 
 16
 Id. at 563, 101 S.Ct. at 1927.
 
 
 17
 Thus, while the amount of damages need not be precise, the fact of damage, consisting of net economic loss suffered by the plaintiff, has been established as the gravamen of a tie-in action. See also Areeda, Antitrust Violations Without Damage Recoveries, 89 Harv.L.Rev. 1127, 1127-1128 (1976).
 
 
 18
 In his complaint, the appellant charged McDonald's with unlawfully tying the sale of its license for the use of its name and trademarks to the lease of its restaurant. Finding that Kypta had failed to come forward with any evidence of actual injury caused by the alleged real estate tie-in, the trial judge granted summary judgment in favor of McDonald's Corporation. Our examination of Kypta's present challenge to the district court's ruling must begin with a look at Siegel v. Chicken Delight, Inc., 448 F.2d 43 (9th Cir.), cert. denied, 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1972), which articulated a standard for determining the existence of injury in tie-in situations relied on by both parties to this appeal as controlling precedent. See Carpa, Inc. v. Ward Foods, Inc., 536 F.2d 39 (5th Cir. 1976).
 
 
 19
 According to the facts of Siegel, Chicken Delight, Inc. required all prospective franchisees to purchase from it a number of cookers, fryers, packing supplies and mixes as a condition of obtaining a license to use the Chicken Delight trademark. The trial judge found that all the elements of a tying arrangement, including actual injury, were reflected in this requirement. While the district court's finding of a tie-in violation was upheld on appeal, a new trial was ordered to determine whether the plaintiffs actually had been injured by the scheme. Holding that economic harm was not inferrable automatically from the occurrence of a tie-in, the Ninth Circuit offered a specific guideline by which the fact of concrete financial damage must be demonstrated:
 
 
 20
 To ascertain whether an unlawful arrangement for the sale of products has caused injury to the purchaser, the cost or value of the products involved, free from the unlawful arrangement, must first be ascertained.
 
 
 21
 448 F.2d at 52.
 
 
 22
 Siegel, then, stands for the proposition that injury resulting from a tie-in must be shown by establishing that payments for both the tied and tying products exceeded their combined fair market value. The rationale behind this requirement is apparent: A determination of the value of the tied products alone would not indicate whether the plaintiff indeed suffered any net economic harm, since a lower price might conceivably have been exacted by the franchisor for the tying product. Unless the fair market value of both the tied and tying products are determined and an overcharge in the complete price found, no injury can be claimed; suit, then, would be foreclosed.
 
 
 23
 Application of these broad guidelines to the facts at hand refutes the validity of the appellant's challenge. In response to McDonald's motion for summary judgment on the real estate tie-in claim, Kypta offers no more than two affidavits attesting to his financial resources in 1966 to buy a site and building for a restaurant. On that basis, he argues that he could have obtained a different location at a lower rent and therefore was injured, regardless of whether or not payments to McDonald's for the lease and license were less than the reasonable value of the rights he received.
 
 
 24
 Because the location of a restaurant is crucial to the volume of sales, Kypta's inability to offer evidence of a specific alternate location and projected profitability there renders his claim of economic injury bogus. See Principe v. McDonald's Corporation, 631 F.2d 303 (4th Cir.), cert. denied, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981).
 
 
 25
 While there is no dispute between the parties regarding the cost of the tied product, the appellant has not even attempted to introduce evidence regarding its actual value. As the Supreme Court noted in United States Steel Corp. v. Fortner Enterprises, Inc., 429 U.S. 610, 97 S.Ct. 861, 51 L.Ed.2d 80 (1977), as long as the overall price is competitive, then no harm has been incurred. Moreover, even assuming arguendo an overcharge in the amount of rent due under the tied product-the lease-no net economic loss is thereby indicated, since McDonald's might otherwise have upped the price exacted for its franchise.
 
 
 26
 Kypta acknowledges that he can neither show a different location equally as profitable as that of his present restaurant nor demonstrate that he was charged more than the reasonable value of his lease and license. These concessions render blows fatal to his appeal. See Martino v. McDonald's System, Inc., 86 F.R.D. 145, 150 (N.D.Ill.1980). Failing to address the value of the franchise and to compare that value to the price tag attached to it by McDonald's, Kypta is able to offer no proof whatsoever that the entire package was noncompetitive. See Krehl v. Baskin-Robbins, 78 F.R.D. 108, 121 (C.D.Cal.1978). Nor does he attempt to counter the possibility that absent the alleged tie-in, his license payment would have been the same. We note that in Siegel, supra, remand was appropriate in order to permit parties to introduce evidence regarding the value of both tied and tying products, following the court's clarification of the appropriate standard. In the present situation, however, such a step would serve no purpose, since Kypta already has conceded his inability to offer any evidence regarding this essential point.
 
 
 27
 Indeed, the only evidence regarding the value of the complete package is that proffered by McDonald's and unopposed by the appellant here, namely, that the appellee's franchise method enables McDonald's to obtain more favorable sites along with additional substantial benefits for both the company and its franchisees. McDonald's argues further that the cost of the lease and license package is reasonable or even a bargain when measured against the advantages from commercial use of the two items by franchisees. Noting these very benefits, the court in Principe v. McDonald's Corp., 631 F.2d 303 (4th Cir.), cert. denied, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981), rejected an identical tie-in claim brought by another McDonald's franchisee. Nor can we accept Kypta's reliance on the vagaries of the marketplace and the passage of twelve years since McDonald's issuance to him of the lease and license to excuse his defectively-asserted cause of action.
 
 
 28
 Kypta makes a last-ditch effort to resuscitate his failing position by relying on the security deposit as evidence from which the fact of damages may be inferred. In his complaint at trial, the plaintiff claimed that McDonald's requirement that a $15,000.00 interest-free, nonassignable security deposit be posted was unlawfully tied to the lease.
 
 
 29
 The trial judge granted summary judgment in favor of McDonald's on this claim, finding that the security deposit was a lawful part of consideration for the franchise and not a distinct product. See also Principe, supra. The appellant does not challenge here the trial court's grant of summary judgment as to the security deposit tie-in claim; he does contend that the security deposit is an element of his claimed damage as to the real estate tie-in charge. Yet, the plaintiff's allegation that his loss of use of that $15,000.00 since 1966 represents injury regardless of whether there was an overcharge on the lease is untenable. Kypta fails to show that this part of the overall package caused him net economic damage which, as we observed above, is the standard by which the fact of damage is determined.
 
 
 30
 Given the trial judge's unappealed ruling that the security deposit is simply part of the total consideration for the franchise, Kypta's loss of its use demonstrates nothing at all in light of his failure to ascertain the fair market value of the franchise. Further, as the appellee points out, the franchise does expressly provide that the security deposit constitutes security for the franchisee's performance of his obligation under both the license and the lease agreements.
 
 
 31
 Finally, Kypta cites the policy militating against the granting of summary judgment in antitrust cases. This policy, however, applies only where questions of "motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). These are not aspects of the present case. Since trial would serve no useful purpose, in view of the plaintiff's admitted inability to satisfy one basic element of his claim-that of economic injury-we conclude that the granting of summary judgment was entirely proper. See, e.g., First National Bank v. Cities Service Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); Pan-Islamic Trade Corp. v. Exxon Corp., 632 F.2d 539, 553 (5th Cir. 1980); Southern Concrete Co. v. United States Steel Corp., 535 F.2d 313, 318 (5th Cir. 1976). The experienced trial judge patiently and painstakingly reviewed each of the above legal requirements with counsel; studied and discussed the controlling authorities; afforded ample time for full discovery and preparation; and correctly concluded that a trial was unnecessary and unwarranted.
 
 
 32
 We AFFIRM.
 
 
 
 *
 Honorable Homer Thornberry, U. S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Kypta and his co-plaintiff, Vincent Bottino, charged McDonald's with violating section four of the Clayton Act, 15 U.S.C. § 15, and section one of the Sherman Act, 15 U.S.C. § 1. The complaint was amended twice, charging additional violations of federal securities law. Mr. Bottino, who subsequently settled his claims against McDonald's, has withdrawn from the case
 
 
 [2]
 Because we uphold the trial court's granting of summary judgment as to the real estate tie-in claim, we necessarily affirm the denial of class certification regarding the same claim, without having to address its merits
 
 
 [3]
 Section 2(a) of the Clayton Act, which has been amended by the Robinson-Patman Act, 15 U.S.C. § 13(a), prohibits anticompetitive price discrimination