COMMONWEALTH OF PENNSYLVA-NIA In Its Own Behalf, Plaintiff,

v.

The LAKE ASPHALT AND PETROLE-UM COMPANY OF PENNSYLVANIA and Robert W. Ehrhart, Defendants.

Civ. A. No. 85–0413.

United States District Court, M.D. Pennsylvania.

June 5, 1985.

David P. Cole, Deputy Atty. Gen., Harrisburg, Pa., for plaintiff.

Ronald M. Katzman, Harrisburg, Pa., Donald T. Bucklin, Wald, Harkrader & Ross, Washington, D.C., for defendants.

MEMORANDUM

CALDWELL, District Judge.

## I. Introduction

Defendants, Lake Asphalt and Petroleum Company (Lake) and Robert W. Ehrhart, President of Lake, filed a motion to dismiss plaintiff's complaint. Subsequently, plaintiff, the Commonwealth of Pennsylvania, filed an amended complaint, mooting some of the issues raised by defendants. Defendants dealt with this amended complaint in their reply brief to plaintiff's brief in opposition to the motion to dismiss. Defendants' motion is accordingly ripe for disposition.

## II. Background

Plaintiff's complaint has two federal causes of action: (1) an antitrust claim for violation of the Sherman Act, 15 U.S.C. § 1; and (2) a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), pursuant to 18 U.S.C. §§ 1962(a) and (b). Pendent state claims are also made for fraud and breach of contract.

All the claims arise from a series of transactions entered into by Pennsylvania and Lake between 1979 and 1981 for the purchase of bituminous emulsion, used in the repair and resurface of roadways. The Commonwealth alleges, inter alia, that the defendants and other co-conspirators agreed to allocate among Lake and other suppliers the sale of bituminous emulsion to the state. The co-conspirators, among other things, submitted collusive, non-competitive bids in support of their scheme.

In connection with the fraud and contract claims, plaintiff claims that defendants illegally charged it higher prices for emulsion purchased from certain suppliers. The RICO claim is predicated upon the use of the mails in obtaining the higher prices.

## III. Discussion.

We must bear in mind the following standard of review in disposing of the motion.

n a motion to dismiss, we must accept as true all well pleaded allegations of the complaint and resolve all reasonable inferences drawn from the allegations in the light most favorable to the plaintiff as the non-moving party. *See Rogin v. Bensalem Township*, 616 F.2d 680, 685 (3d Cir.1980). We can dismiss plaintiff's claims only if it appears beyond a reasonable doubt that plaintiff cannot prove facts in support of its claim sufficient to entitle it to relief. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444 (3d Cir.1977).

*Pennsylvania v. Emulsion Marketing, Inc.*, No. 84–1551, slip op. at 3 (M.D.Pa. May 6, 1985) (Caldwell, J.) (brackets added).

### A. Statute of Limitations Defense.

Defendants first contend that any antitrust claim accruing before March 27, 1981 is barred by the four year statute of limitations in the Clayton Act. 15 U.S.C. § 15b. Plaintiff asserts that the statute was tolled by defendants' fraudulent concealment of their illegal activities. To establish fraudulent concealment that would toll the statute, plaintiff must show that the defendants concealed the conduct complained of, and that plaintiff failed, despite the exercise of due diligence on its part, to discover the facts forming the basis of its claim. *See In re Beef Industry Antitrust Litigation*, 600 F.2d 1148 (5th Cir.1979). Paragraph 18 of the amended complaint sets forth the alleged acts of concealment: (1) certification to the Commonwealth by the co-conspirators that bids had been made in an independent and non-collusive manner by the execution of the standard bid package; (2) submission of complementary bids; (3) meetings and phone calls prior to bid lettings to allocate the supply

of bituminous emulsion to the Commonwealth; and (4) phone calls subsequent to the bid lettings to further the allocation process.

■ Defendants argue that none of this conduct constitutes fraudulent concealment. Citing *Overfield v. Pennroad Corp.*, 146 F.2d 889, 896 (3d Cir.1944), they contend that "concealment which tolls the statute must be an affirmative, independent act of concealment; mere silence or nondisclosure, even by corporate officials is not enough." Here, defendants argue the alleged concealment consists only of acts in furtherance of the conspiracy itself. Further, the certification of non-collusion is a mere denial of wrongdoing, insufficient to toll the statute. Plaintiff takes the opposite position. It claims, citing *Ingram Corp. v. J. Ray McDermott and Co., Inc.*, 495 F.Supp. 1321 (E.D.La.1980), *rev'd on other grounds*, 698 F.2d 1295 (5th Cir. 1983), that it "is unnecessary to show affirmative acts of concealment independent of the antitrust conspiracy." Plaintiff's Brief at 4. Plaintiff also asserts that the certification of non-collusion in the bid package can constitute fraudulent concealment.

In connection with the requirement of independent acts of concealment, *Ingram, supra*, does support plaintiff's position in that there the court relied, in part, upon conduct in furtherance of the conspiracy to find fraudulent concealment. Plaintiffs in *Ingram* also alleged, however, that defendants had falsified, destroyed and concealed records and had bribed employees in concealing the conspiracy. Obviously, these were affirmative, independent acts of concealment sufficient to toll the statute. Significantly, the court in *Ingram* never explicitly held that acts in furtherance of the conspiracy alone would be sufficient to toll the statute. Under these circumstances, we conclude that the correct statement of the rule requires that the fraudulent concealment consists of affirmative acts independent of the underlying conspiracy. *See General Aircraft Corp. v. Air America, Inc.*, 482 F.Supp. 3 (D.D.C.1979). Other-

wise, the statute of limitations would be tolled indefinitely until plaintiff discovered its cause of action. *See Campbell v. Upjohn Co.*, 498 F.Supp. 722 (W.D.Mich.1980), *aff'd* 676 F.2d 1122 (6th Cir.1982). Consequently, we cannot consider the conduct of defendants in furtherance of the conspiracy in connection with the tolling of the statute.

■ In connection with the significance of the certification of non-collusion in the bid package, plaintiff cites *Rutledge v. Boston Woven Hose and Rubber Co.*, 576 F.2d 248 (9th Cir.1978). There, discussing fraudulent concealment, the Ninth Circuit Court of Appeals stated:

To avoid the bar of limitation by invoking the concept of fraudulent concealment, the plaintiff must allege facts showing affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief. Silence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure. The affirmative act of denying wrongdoing may constitute fraudulent concealment where the circumstances make the plaintiff's reliance upon the denial reasonable. . . .

*Id.* at 250.

Plaintiff claims that the circumstances of the instant case make its reliance upon the non-collusion provision reasonable. First, it asserts that it had no knowledge of bid rigging in the highway construction industry at the time it did business with Lake. Second, Pennsylvania passes upon so many bids in a year that it would be unreasonable to require it to investigate each bid for legality.

We fail to see the connection between plaintiff's ignorance of bid rigging in general and the reasonableness of its reliance upon Lake's assertion of non-collusion. The court in *Rutledge* was speaking of conduct on the part of a defendant that would lead a reasonable person to believe

that there was no claim. Conduct of the industry in general is therefore simply not probative of any fraudulent concealment here. Similarly, whether or not it would be reasonable to require the Commonwealth to investigate each bid submitted to it does not relate to any conduct of the defendants but, rather, to limitations upon the procedure for obtaining supplies in highway construction.

*In re Fertilizer Antitrust Litigation,* 1979–2 Trade Cases (CCH) ¶ 62,894 (E.D. Wash.1979) disposes of the plaintiff's position in this case. In *In re Fertilizer,* the plaintiff states, including some private individuals, filed antitrust claims against the defendant companies, alleging that the defendants tried to restrain trade in fertilizer. Plaintiffs relied upon the doctrine of fraudulent concealment to keep alive claims arising four years before the filing of the complaint. As affirmative acts of concealment, plaintiffs alleged, inter alia, the following: (1) the submission of bids which by their submission were represented to be competitive when in fact they were not; (2) the false signing of non-collusion affidavits and/or certificates of regularity; (3) the making of false and misleading statements concerning prices, price increases and the existence of shortages. Rejecting the claim that these acts could constitute fraudulent concealment, the court stated:

> Bids that had the appearance of regularity and their submission, which allegedly inferred that the bids were complete and regular, are not affirmative acts aimed at fraudulent concealment of anti-competitive conduct; such acts are at best passive conduct of concealment, if not simply silence. The submission of bids is merely failure to disclose the existence of a possible claim for relief, and that does not constitute an affirmative act of concealment. [citation omitted].... Similarly, falsely signing non-collusion affidavits or the like is not sufficient to permit an inference that the plaintiffs, who are not insensitive to the implications of the antitrust law nor naive about the conduct of antitrust violators, would be significantly influenced by a single

denial of wrongdoing. In short, under the circumstances of the present case, such conduct would not lead a reasonable person to believe that he did not have a claim for relief and, therefore, cannot serve as a basis for invoking the doctrine of fraudulent concealment. *See Rutledge v. Boston Woven Hose and Rubber Co.,* 576 F.2d 248, 250 (9th Cir.1978). In addition, signing non-collusion affidavits or certificates of regularity amount to no more than a denial of wrongdoing which does not constitute fraudulent concealment. *King & King Enterprises v. Champlin Petroleum Co.,* 446 F.Supp. 906, 912 (E.D.Okla.1978).

*Id.* ¶ 62,894 at 79, 178–79.

Other cases, cited by plaintiff, have reached the opposite conclusion concerning conduct similar to that alleged to have been done by the defendants here. *See Massachusetts v. Ashland Warren, Inc.,* 1983–2 Trade Cases (CCH) ¶ 65, 682 (D.Mass.1983); *Illinois v. Ralph Vancil, Inc.,* 1976–2 Trade Cases (CCH) ¶ 61,025 (S.D.Ill.1976). In *Massachusetts,* however, the conduct complained of has not been described in enough detail to be of assistance to plaintiff here and the court there noted that a contrary decision on fraudulent concealment could result after a fuller record had been developed. In *Illinois,* in addition to conduct similar to defendants here, affirmative, independent acts of concealment of the conspiracy were alleged including payment of bribe money to the state's Secretary of State and concealment of the sources and destination of that money. We conclude that *In re Fertilizer, supra,* should control here. Accordingly, we hold that any claims for antitrust damages accruing before March 27, 1981, four years before the filing of the complaint, are barred by the statute of limitations.

■ In any event, we must also agree with defendants that the Commonwealth has failed to plead that it acted with due diligence in this case. Paragraph 19(a) of the amended complaint alleges that the Commonwealth first learned in July of

1982 of industry wide irregularities in the highway construction industry from a federal investigation. There is no allegation of when this investigation began. While paragraph 19(b) alleges that a "joint investigation" was immediately commenced, subparagraph (c) asserts that the Commonwealth first discovered possible irregularities in Engineering District 1, where defendant Lake bid for sales, from a federal indictment filed on March 11, 1983. Further, facts implicating defendants in particular were only discovered from a federal trial held in June of 1983. Paragraph 19(d). Finally, plaintiff alleges that prior to March of 1983, it simply "had no reason to suspect" that bid rigging was going on. Paragraph 19(e). Although these allegations reveal extensive federal activity, none of them indicate what the plaintiff did itself to uncover its claim. Paragraph 19(e) is merely a statement of ignorance which is insufficient to avoid the statute. *See Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570 (4th Cir.1976).

### B. *The Complaint Makes A State Law Claim For Fraud.*

■ Defendants contend that the complaint fails to allege a state law claim for fraud because there is no allegation of misrepresentation. The fraud claim arises from Lake's contractual right to pass on price increases in bituminous emulsion from its suppliers to the Commonwealth. When such a price increase occurred, Lake was to supply written evidence of its supplier's price increase. Plaintiff alleges that Lake submitted such proof as to only one supplier, Bituminous Emulsion Company (BEC), but, without telling the Commonwealth, proceeded to bill the higher price for supplies received from other companies which did not increase their prices. Plaintiff argues that, by the documents submitted, Lake implicitly represented that it was increasing its charges for BEC supplies alone and that this representation was false as evidenced by Lake's subsequent billings.

Defendants contend that the documents make no false representations. They clearly show a price increase only to BEC from its own supplier, BEC's notification of an increase to Lake, and Lake's increase to the Commonwealth. Moreover, the invoices submitted by Lake to the Commonwealth clearly indicated the identity of the particular supplier of that quantity of emulsion. The prices charged for emulsion obtained from its two suppliers other than BEC were increased but only because of a contract term requiring Lake to charge a uniform price for all emulsion supplied to the state. Defendants argue that the Commonwealth cannot complain about its own contract terms.

Under Pennsylvania law, fraud consists of: (1) a misrepresentation; (2) a fraudulent utterance or non-disclosure; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient as the proximate result. *Marian Bank v. International Harvester Credit Corp.*, 550 F.Supp. 456 (E.D.Pa.1982), *aff'd mem.* 725 F.2d 668 (3d Cir.1983) (citing *Neuman v. Corn Exchange National Bank & Trust Co.*, 356 Pa. 442, 51 A.2d 759 (1947)). In connection with fraudulent non-disclosure, "[i]t is a well-established rule that deliberate non-disclosure of a material fact amounts to culpable misrepresentation no less than an intentional false affirmation." *Marian Bank, supra* at 461.

In the instant case, viewing the allegations of the complaint in the light most favorable to plaintiff, Lake's failure to disclose that it considered BEC's price increase, and Lake's subsequent compliance with the contract notification terms, as justification for increasing prices on its other two suppliers could be construed as a material omission. In turn, it could also be considered fraudulent regardless of whether Lake's conduct is construed as a factual omission, silence as to its opinion as to its rights under the contract, or silence as to its existing intentions in performing under the contract. *See Seligson v. Plum Tree, Inc.*, 361 F.Supp. 748 (E.D.Pa.1973). Ac-

cordingly, at this stage of the proceeding we must conclude that plaintiff has stated a valid claim for fraud.

### C. Plaintiff Has Stated A Valid Breach of Contract Claim.

 Plaintiff's contract claim is based upon Lake's alleged violation of the escalation clause in charging the increased BEC price for emulsion received from its other suppliers. Defendants raise the uniform pricing provision discussed in section B above as a defense but, just as in dealing with the fraud claim, we must reject their position. This is only a motion to dismiss. A good cause of action has been pleaded. Defendants contractual defense is better presented when a fuller record has been developed.

Additionally, defendants raise the four year statute of limitations found in the Uniform Commercial Code, 13 Pa.C.S. § 2725, and at 42 Pa.C.S. § 5525(2). Plaintiff correctly points out, however, that a statute of limitations does not apply to the Commonwealth unless the Commonwealth is specifically covered by the statute. *See Commonwealth v. Rockland Construction Co.*, 498 Pa. 531, 448 A.2d 1047 (1982). These statutory sections do not refer to the Commonwealth. Accordingly they do not bar the contract claim.

### D. The RICO Claim.

Defendants originally contended that plaintiff's RICO claim must be rejected because plaintiff failed to allege: (1) the necessary predicate acts; (2) injuries stemming from a pattern of racketeering activity; (3) that defendants have been convicted of the underlying predicate offenses; (4) a connection between defendants and organized crime; (5) a claim under section 1962(a) or (b) of RICO. After review of our memorandum in *Pennsylvania v. Emulsion Marketing, Inc.*, No. 84–1551 (M.D.Pa. May 6, 1985), in which we de-

ferred ruling on similar objections until the United States Supreme Court issued definitive rulings in two RICO cases recently argued before it, *Sedima, S.P.R.L. v. Imrex Company, Inc.*, 741 F.2d 482 (2d Cir. 1984) and *Haroco Inc. v. American National Bank & Trust Co. of Chicago*, 747 F.2d 384 (7th Cir.1984), defendants withdrew their objections pending the outcome of the Supreme Court decisions. They still maintain, however, that, because no fraud claim can be asserted against them, the RICO claim must fail for lack of predicate offenses. We have rejected defendants' argument on the insufficiency of the fraud claim. Accordingly, we will not dismiss the RICO claim but defendants will be permitted to renew their motion to dismiss the RICO count after the Supreme Court has issued its rulings in *Sedima, supra* and *Haroco, supra.*[1]

We will issue an appropriate order.

---

1. In their reply brief, defendants requested that they be granted an opportunity to answer the amended complaint if we denied their motion. We do not have to rule on this request since Fed.R.Civ.P. 12(a)(1) permits defendants to answer the amended complaint within ten days after we deny their motion.