**COMMONWEALTH OF PENNSYLVANIA on Behalf of itself and the School District of Philadelphia, Plaintiffs,**

v.

**MILK INDUSTRY MANAGEMENT CORP. t/a Balford Farms and Spring Valley Farms, Inc., Defendants.**

No. 91–7328.

United States District Court, E.D. Pennsylvania.

Oct. 15, 1992.

Carl S. Hisiro, Thomas L. Welch, David R. Weyl, Office of Atty. Gen., Harrisburg, PA, for plaintiffs.

Joel W. Todd, Dolchin, Slotkin & Todd, P.C., Philadelphia, PA, Catherine M. Harper, Hepburn, Willcox, Hamilton & Putnam, Blue Bell, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This anti-trust action, which was instituted on November 26, 1991, by the Commonwealth of Pennsylvania on behalf of itself and the School District of Philadelphia, is presently before this Court pursuant to the Defendants' Joint Motion for Summary Judgment. That motion is denied for the reasons set forth below.

## I. FACTUAL BACKGROUND AND HISTORY OF THE CASE

The Plaintiffs' Complaint alleges that beginning in early Spring, 1986, the Defendants, Milk Industry Management Corp. t/a Balford Farms (hereinafter "Balford Farms") and Spring Valley Farms, Inc. entered into and engaged in a conspiracy to suppress and eliminate competition for the Philadelphia School District's fluid milk contract by submitting collusive, non-competitive and rigged bids. Ostensibly, during the time period covered by the Complaint, the School District had invited dairies and other milk producers to submit sealed, competitive bids for fluid milk products to be supplied to the schools in the Philadelphia District for the 1986–87 school year. Spring Valley Farms and Balford Farms were the only bidders and the contract was subsequently awarded to Balford Farms. The School District thereafter exercised its two options to renew that contract for the 1987–88 and 1988–89 school years.

The Plaintiffs further contend that the Defendants and certain other unnamed co-conspirators fraudulently concealed the fact that their bids for the School District's 1986–87 contract were collusive and non-competitive with the result that the School District and the Commonwealth were prevented from discovering the existence of the alleged conspiracy until June, 1991. According to the Plaintiffs' Complaint, the Defendants' actions constituted violations of the Sherman Act, 15 U.S.C. § 1 *et seq.* (entitling them to damages under the Clayton Act, 15 U.S.C. § 12 *et seq.*) and the Pennsylvania Antibid–Rigging Act, 73 P.S. § 1611, *et seq.* as well as common law fraud.[1]

In response, both Defendants filed answers in which they denied that they had conspired in any way to rig the bids submitted for the School District's milk contract and raising, *inter alia,* the affirmative defenses of the statute of limitations and failure to state a claim upon which relief may be granted. Discovery has since proceeded and Defendants now argue that the record in this case reflects the absence of a genuine issue as to any material fact

---

1. The fraud count was voluntarily dismissed with prejudice by Plaintiffs on September 8, 1992.

and that they are entitled to judgment in their favor as a matter of law with respect to both the federal and state law claims.

## II. LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) sets forth the primary principles governing the entry of summary judgment. That rule states, in relevant part:

> "... The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ..."

A summary judgment motion thus requires the court to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C.Cir.1988), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). Generally speaking, the party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In resolving a motion for summary judgment and in determining whether the movant has met its burden of proof, the court must view the evidence submitted and any inferences as may arise therefrom in the light most favorable to the non-moving party. *O'Donnell v. U.S.*, 891 F.2d 1079 (3rd Cir.1989); *McLaughlin v. Liu*, 849 F.2d 1205 (9th Cir.1988). Conversely, in the face of a properly supported motion for summary judgment, the adverse party may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Liberty Lobby, Inc. v. Dow Jones & Co., supra*. Caution must be exercised in granting summary judg-

ment, however, where state of mind is at issue. *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472 (11th Cir. 1991); *Bryant v. Maffucci*, 923 F.2d 979 (2nd Cir.1991).

By way of the present motion, Defendants argue that they are entitled to the entry of judgment in their favor as a matter of law because: (1) the four year statutes of limitations governing both the federal and state law causes of action expired prior to the commencement of this lawsuit and Plaintiffs cannot produce any evidence which would justify a finding that these four-year limitations periods should be tolled; (2) the Commonwealth of Pennsylvania had no standing to bring or maintain this action; (3) the Plaintiffs have not and cannot show that any violations of federal or state law occurred or that they suffered any actual injury or damage as a result of the Defendants' alleged actions. We now address each of these arguments in turn in the following paragraphs.

## III. STATUTE OF LIMITATIONS

▮ 15 U.S.C. § 15b establishes a four-year limitations period for all private anti-trust actions. That statute reads:

> Any action to enforce any cause of action under sections 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this Act shall be revived by this Act.

Accrual of a private anti-trust cause of action for purposes of the statute of limitations occurs when the defendants commit an act which injures the plaintiff's business. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), *rehearing denied*, 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971); *NL Industries, Inc. v. Gulf & Western Industries, Inc.*, 650 F.Supp. 1115 (D.Kan.1986). Even when defendants continue to perform overt acts in furtherance of an anti-trust conspiracy within the statutory period, plaintiff's injuries also must fall within the limitations period in order

**504**

not to be time-barred. *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir.1987).

■ An exception to this general rule arises, however, where the defendant has fraudulently concealed its illegal activities from the plaintiff. *Commonwealth of Pennsylvania v. Lake Asphalt and Petroleum Company of Pennsylvania*, 610 F.Supp. 885 (M.D.Pa.1985). In establishing fraudulent concealment, the plaintiff bears the burden of proving: (1) wrongful concealment of its cause of action by defendants; (2) failure of the plaintiffs to discover the operative facts or the basis of their cause of action within the limitations period; and (3) plaintiffs' due diligence until discovery of the facts. *Id.* at 887. Under some circumstances, the fraud may be self-concealing or the conspiracy of such a character that its successful operation conceals itself. In such cases, evidence of a self-concealing conspiracy may satisfy the wrongful concealment element of the fraudulent concealment doctrine. *Bethlehem Steel Corp. v. Fischbach and Moore, Inc.*, 641 F.Supp. 271 (E.D.Pa.1986). Bid-rigging conspiracies are not necessarily self-concealing in and of themselves, however. *Texas v. Allan Construction Co.*, 851 F.2d 1526 (5th Cir.1988).

■ The Pennsylvania Antibid–Rigging Act also has a four-year limitations period and specifically provides that the statute of limitations does not begin to run until such time as a violation is discovered or should have been discovered by the plaintiff. Indeed, Section 4 of the Act, 73 P.S. § 1614 reads in pertinent part:

> ... The cause of action shall arise at the time the governmental agency which entered into the contract discovered, or should have discovered, the conduct amounting to the offense declared to be unlawful by this act. The action shall be brought within four years of the date that the cause of action arose. No civil action shall be maintained after the expiration of ten years from the date the contract was signed by the parties.

73 P.S. § 1614(d).

Pennsylvania common law likewise recognizes the discovery rule's applicability where statutes of limitations are at issue. Thus, fraud or deceit will also operate in the Commonwealth's courts to toll a statute of limitations until such time as its existence is discovered or in the exercise of due diligence could have been discovered. *See: Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543 (1983); *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984); *Recchion on behalf of Westinghouse Electric Corporation v. Kirby*, 637 F.Supp. 1309 (W.D.Pa.1986).

■ In evaluating the foregoing principles in the context of the case at bar, we note that the Plaintiffs have alleged in both their complaint and brief in opposition to the instant motion that the Defendants' alleged conspiracy was self-concealing and that Plaintiffs had no reason to suspect that the bids for the 1986 Philadelphia School District milk contract may have been rigged until early June, 1991 when their expert Dr. James T. McClave issued a preliminary report questioning bidding practices in the Philadelphia market. Our review of the existing record, however, reveals that the Plaintiffs have not provided *any* evidence whatsoever to support these allegations or to otherwise demonstrate that the conspiracy was not discovered during the four-year limitations period despite their due diligence. To the contrary, the only evidence produced on this issue is the deposition testimony of school district employee James Kallmeyer that George Burnett of the purchasing department traced the price or the cost of the district's milk contract with Balford on a monthly basis. (Kallmeyer Deposition at pages 21–25) Moreover, according to the testimony and the August 20, 1992 report of Dr. McClave, the Commonwealth *told him* to assume that Spring Valley and Balford Farms had conspired to ensure that Balford would obtain the 1986–87 Philadelphia School District milk contract in his econometric analysis and estimation of economic damages. Dr. McClave further testified that he was not asked to analyze the raw cost information and has never done such an analysis to

determine whether that data might suggest that a bid-rigging conspiracy existed. (*See:* Exhibit 16 to Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment and pp. 12–16 of the Deposition of James T. McClave) Clearly then, of the record evidence thus far produced by both parties, there is nothing which supports the Plaintiffs' contention that they could not and did not discover the purported conspiracy until June, 1991.

However, while the question of whether a statute of limitations has run on a claim is usually a question of law for the trial judge, there are times when a factual determination by the jury may be required. *School District of Borough of Aliquippa v. Maryland Casualty Co.*, 402 Pa.Super. 569, 587 A.2d 765 (1991); *Northampton Area Community College v. Dow Chemical, U.S.A.*, 389 Pa.Super. 11, 566 A.2d 591 (1989), aff'd, 528 Pa. 502, 598 A.2d 1288 (1991). *See Also: Recchion on behalf of Westinghouse Electric Corp. v. Kirby*, 637 F.Supp. 1309 (W.D.Pa.1986). In light of the serious nature of the accusations against Defendants and the public interests at stake in this case, we decline to grant summary judgment on this basis at this time. The Plaintiffs are nevertheless cautioned that in the absence of any evidence being presented on this issue at the trial of this matter, this Court shall not hesitate to entertain any motions for nonsuit or for judgment as a matter of law and any requests for counsel fees and costs that the Defendants should care to present. *See:* F.R.C.P. Nos. 41, 50.

## IV. STANDING

Defendants next aver that summary judgment as to all claims should be entered in their favor at this juncture because it is now clear that the Commonwealth of Pennsylvania does not possess the requisite standing to sue on its own behalf or on behalf of the Philadelphia School District under either the Clayton Act or the Pennsylvania Antibid–Rigging Act. We disagree.

The Plaintiffs commenced this action pursuant to 15 U.S.C. §§ 15 and 26. Those sections state, in relevant part:

§ 15. Suits by persons injured

(a) Amount of recovery; prejudgment interest

Except as provided in subsection (b) of this section, any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee. The court may award under this section, pursuant to a motion by such person promptly made, simple interest on actual damages for the period beginning on the date of service of such person's pleading setting forth a claim under the antitrust laws and ending on the date of judgment, or for any shorter period therein, if the court finds that the award of such interest for such period is just in the circumstances. . . .

§ 26. Injunctive relief for private parties; exception; costs

Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for. an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue: Provided, That nothing herein contained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit in equity for

injunctive relief against any common carrier subject to the provisions of subtitle IV of Title 49, in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission. In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff.

Section 4C of the Clayton Act in turn permits state attorneys general to bring civil anti-trust actions on a *parens patriae* basis:

§ 15c. Actions by state attorneys general

(a) Parens patriae; monetary relief; damages; prejudgment interest

(1) Any attorney general of a State may bring a civil action in the name of such State, as parens patriae on behalf of natural persons residing in such State, in any district court of the United States having jurisdiction of the defendant, to secure monetary relief as provided in this section for injury sustained by such natural persons to their property by reason of any violation of sections 1 to 7 of this title. The court shall exclude from the amount of monetary relief awarded in such action any amount of monetary relief (A) which duplicates amounts which have been awarded for the same injury, or (B) which is properly allocable to (i) natural persons who have excluded their claims pursuant to subsection (b)(2) of this section, and (ii) any business entity.

Section 8 of the Pennsylvania Antibid-Rigging Act 73 P.S. § 1618 likewise provides in pertinent part:

(b) Civil actions.—The Office of Attorney General shall have the authority to bring civil actions under section 4[2] on behalf of the Commonwealth and any of its departments, boards, agencies, authorities and commissions. Political subdivisions, municipal corporations, home rule municipalities and school districts shall have the right to bring a civil action under section 4. Upon the filing of a complaint, a copy thereof shall be served on the Attorney General. The plaintiff, at any time, may request the Attorney General to act on its behalf. The Attorney General, upon determining that it is in the best interest of the Commonwealth, shall have the authority to intervene on behalf of the Commonwealth in such actions.

■■■ Generally, regardless of who the plaintiff is in an anti-trust matter, they must establish a physical and economic nexus between the alleged violation and the harm suffered. *NL Industries v. Gulf & Western Industries, supra.,* 650 F.Supp. at 1124. The standing requirements under 15 U.S.C. § 15 are somewhat more stringent than those under 15 U.S.C. § 26 in that to show standing to recover under the treble damages section of the Act, the plaintiff must first allege and prove injury to his business or property (a term definitively limited to interests in commercial ventures or enterprises) and then that the injury suffered was occasioned "by reason of an anti-trust violation." *In Re Multi–District Vehicle Air Pollution v. Automobile Manufacturers Association,* 481 F.2d 122 (9th Cir.1973).

■■■ Anti-trust standing to claim treble damages for particular harms under § 4 of the Clayton Act, 15 U.S.C. § 15 are thus to be assessed on a case-by-case basis, taking into account: (1) the risk of duplicative recovery by multiple anti-trust claimants; (2) the extent to which the claim is based upon speculative, abstract or impractical measures or damages; (3) the causal connection between the alleged violation and the harm suffered; and (4) the relationship of the injury alleged to the forms of injury about which Congress was concerned when it created a private remedy. *Nelson v. Monroe Regional Medical Center,* 925 F.2d 1555, 1562–1563 (7th Cir.1991); *Pocahontas Supreme Coal Co. v. Bethlehem Steel, supra,* 828 F.2d at 219, citing, *Associated General Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) and *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982).

█ It has further been held that the plaintiff must have suffered a direct injury in order to have standing to sue. Thus, for example, an allegation that a plaintiff has been forced to pay a higher price for something as the result of an original purchaser of a certain good or service having "passed on" the result of an anti-trust violation is insufficient to confer standing. *See, e.g.: Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). That this rationale applies with equal force to *parens patriae* actions is similarly well-settled. *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990).

█ In the instant case, it is clear that the Philadelphia School District directly suffered the anti-trust injury alleged inasmuch as it was the entity which bid and then paid to defendant Balford purportedly inflated milk prices for the 1986–1989 school years. In considering all of the factors set forth above and viewing the entire record in the light most favorable to the Plaintiffs, we find that there exists a material issue of fact as to whether the school district suffered a commercial injury and damages as the result of an anti-trust viclation/bid-rigging conspiracy by and between the Defendants. Moreover, in light of the fact that 71 P.S. § 732–204(c) decrees that the Pennsylvania Attorney General "shall represent the Commonwealth and its citizens in any action brought for violation of the anti-trust laws of the United States and the Commonwealth" and in view of the school district's assignment of its cause of action to the Attorney General's office, we hereby conclude that the Plaintiffs have sufficiently shown that they possess standing to maintain this action. (Exhibit 20 to Plaintiff's Brief in Opposition to Defendants' Summary Judgment Motion). *See Also: Commonwealth of Pennsylvania v. Mid–Atlantic Toyota Distributors, Inc.*, 704 F.2d 125 (4th Cir.1983); *Alaska v. Chevron Chemical Company*, 669 F.2d 1299 (1982); *New York v. Dairylea Cooperative, Inc.*, 570 F.Supp. 1213 (S.D.N.Y.1983). Defendants' motion for summary judgment on the grounds of lack of standing is therefore also denied.

## V. NO SHOWING OF ACTUAL INJURY OR VIOLATION

Finally, Defendants assert that this case should now be dismissed because there is inadequate proof that a violation of the Antibid–Rigging Act occurred or that the Plaintiffs have suffered any injury as a result of the Defendants' allegedly unlawful conduct. Once again, the law in these areas is clear.

█ The anti-trust laws were enacted for the protection of competition, not competitors. *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). For this reason, it has been said that to establish liability under the various provisions of the Sherman and Clayton Acts, proof must be provided that the Defendants' conduct violated the Sherman Act and that the Plaintiffs suffered an actual anti-trust injury as a result entitling them to treble damages under § 4 of the Clayton Act, 15 U.S.C. § 15. Stated otherwise, the elements of a claim under Section 4 for treble damages are (1) an anti-trust violation; (2) fact of damage; and (3) the amount of damages. The anti-trust violation element in turn requires proof of a claim under Section 1 or 2 of the Sherman Act.[2] *Christiana Mortgage Corporation v. Delaware Mortgage Bankers Association*, 136 F.R.D. 372, 382 (D.Del.1991). *See Also: National Music Centers of America, Inc.*, 1990 WL 157374 (M.D.Pa.1990).

---

**2.** In this case, Plaintiffs have alleged that the Defendants violated section 1 of the Sherman Act, which states:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

**508**

In this regard, anti-trust injury is defined as an "injury of the type the anti-trust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Belcher Oil Co. v. Florida Fuels, Inc.*, 749 F.Supp. 1104, 1107 (S.D.Fla.1990). To ascertain whether an unlawful arrangement for the sale of products has caused injury to the purchaser, the cost or value of the products involved free from the unlawful arrangement must first be ascertained. *Kypta v. McDonalds Corp.*, 671 F.2d 1282, 1285 (11th Cir.1982).

Under the Pennsylvania Act, bid-rigging is defined as:

The concerted activity of two or more persons to determine in advance the winning bidder of a contract let or to be let for competitive bidding by a governmental agency. It shall include, but not be limited to, any one or more of the following:

(1) Agreeing to sell items of services at the same price.

(2) Agreeing to submit identical bids.

(3) Agreeing to rotate bids.

(4) Agreeing to share profits with a contractor who does not submit the low bid.

(5) Submitting prearranged bids, agreed upon higher or lower bids, or other complementary bids.

(6) Agreeing to set up territories to restrict competition.

(7) Agreeing not to submit bids.

73 P.S. § 1612.

73 P.S. § 1613(a) goes on to state:

(a) Bid-rigging unlawful.—It shall be unlawful for any person to conspire, collude or combine with another in order to commit or attempt to commit bid-rigging involving:

(1) A contract for the purchase of equipment, goods, services or materials or for construction or repair let or to be let by a governmental agency.

(2) A subcontract for the purchase of equipment, goods, services or materials or for construction or repair with a prime contractor or proposed prime contractor for a governmental agency.

Pennsylvania law defines conspiracy as a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means. *Smith v. Wagner*, 403 Pa.Super. 316, 588 A.2d 1308 (1991); *Pelagatti v. Cohen*, 370 Pa.Super. 422, 536 A.2d 1337, *appeal denied*, 519 Pa. 667, 548 A.2d 256 (1987).

Applying all of the preceding standards to the matter now before the Court, we find that the Plaintiffs have produced sufficient evidence that an unlawful conspiracy existed within the meaning of both the Sherman and the Antibid–Rigging Acts to withstand the Defendants' summary judgment motion. According to the deposition of John Kane, Bud Murray, a representative of defendant Spring Valley Farms had told him that the only reason Spring Valley had put in a bid for the 1986 Philadelphia School District milk contract was because Balford Farms had asked it to. (Kane Deposition, pp. 37–38) Mr. Kane's testimony was mirrored by that of Balford Farms employee James Walsh who admitted that he had asked Bud Murray of Spring Valley to put in a bid to the Philadelphia School District. When Mr. Murray asked Mr. Walsh what to do with respect to the bid, Mr. Walsh told him to "just bid minimums." (Walsh Deposition, pp. 48–52) Bud Murray himself also acknowledged that he had submitted a bid on behalf of Spring Valley because James Walsh of Balford had requested that he do so to ensure that Balford was not the only bidder for the '86 contract. (Murray Deposition, pp. 50–51) We believe that this testimony is, when viewed in the light most favorable to the Plaintiffs, sufficient to raise a material issue of fact as to whether Balford and Spring Valley conspired to restrain, rig, and/or guarantee that the bid submitted by Balford Farms for the 1986 School District milk contract would be the one accepted and to satisfy the requirement that a Sherman Act § 1 and Antibid–Rigging Act violation occurred.

We similarly find that the deposition testimony and report of Dr. McClave that the Philadelphia School District was overcharged by 14.2% during the period of the alleged conspiracy resulting in damages of $892,653 adequately raises a factual question as to whether the Plaintiffs suffered a cognizable injury. *See Also: Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand*, 807 F.2d 44, *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). So saying, the joint summary judgment is denied on these grounds as well.

### ORDER

AND NOW, this 14th day of October, 1992, upon consideration of Defendants' Joint Motion for Summary Judgment, it is hereby ORDERED that the Motion is DENIED for the reasons set forth in the preceding opinion.